ASOCIACIÓN DE VECINOS DE VILLA CAPARRA, INC. ET AL., demandantes y recurridos, *v.* IGLESIA CATÓLICA, APOSTÓLICA Y ROMANA DE PUERTO RICO, ETC., demandados y recurrentes.

*Número:* R-84-420 *Resuelto:* 8 de mayo de 1986

348

*José A. Fernández-Paoli* de *Martínez Álvarez, Fernández-Paoli, Menéndez Monroig, Menéndez-Cortada & Lefranc-Romero,* abogados de la recurrente; *César T. Andreu Megwinoff,* abogado de la parte recurrida; *Francisco M. Troncoso,* abogado de la parte compareciente como *amicus curiae,* Ángel Manuel de la Rosa Schuck *et al.; Fernando E. Agrait,* abogado de la parte compareciente como *amici curiae,* Asociación de Propietarios de Villa Caparra.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Las partes demandadas, Iglesia Católica, Apostólica y Romana de Puerto Rico y la Academia y Parroquia de San José de Villa Caparra, recurren ante nos de una sentencia del Tribunal Superior que prohibió la construcción de un gimnasio auditorio en un solar localizado en la Urbanización Villa Caparra que está afectado por unas servidumbres en equidad.

Por la importancia pública de la controversia, expedimos el recurso y mediante esta opinión confirmamos al tribunal de instancia.

## I

Entre 1975 y 1979 la Iglesia Católica adquirió cuatro (4) solares en la Urbanización Villa Caparra para la construcción de una cancha auditorio para la celebración de torneos, fiestas y otras actividades de la Academia San José. Los solares que adquirieron forman parte de una urbanización establecida por la familia González-Giusti. Cada uno de los solares tiene las siguientes restricciones sobre la cabida, uso y tipo de construcción:

> – – – B. En cada uno de los solares que se deslinden, segreguen y vendan no podrá construirse más de una casa residencia, de una sola vivienda, el costo de la cual no podrá ser menor de Tres Mil Dólares; podrán sin embargo construirse edificaciones independientes para alojamiento de servidumbre, chauffer, etc., así como también para almacenaje de automóviles privados. [1]

Luego de agrupar los solares, la Iglesia obtuvo el permiso correspondiente de la Administración de Reglamentos y Permisos (A.R.P.E.) y comenzó la construcción. Antes de la fecha de efectividad del permiso, la Asociación de Vecinos de Villa Caparra, Inc. radicó un *injunction* para detener la construcción del auditorio porque violaba las condiciones restrictivas que afectaban a todos los solares. El tribunal de instancia consolidó la vista del *injunction* preliminar con la del permanente y emitió una sentencia que prohibía la construcción del auditorio y ordenaba la destrucción de las obras iniciadas, porque violaban las servidumbres en equidad. La Iglesia recurre ante esta curia y alega que se cometió error en la apreciación de la

---

[1] Mediante escritura otorgada en 1939 la familia González-Giusti impuso estas restricciones sobre una finca de su propiedad que luego procedió a segregar y vender en parcelas para su urbanización.

prueba al sostener la efectividad de estas restricciones sin conocer los cambios ocurridos en el área. ([2])

La controversia jurídica principal que tenemos ante nuestra consideración es la siguiente: ¿Han ocurrido en el vecindario de la Urbanización Villa Caparra suficientes cambios para modificar o extinguir la servidumbre en equidad que limita el uso de dichos terrenos? ¿Cuáles son los cambios en el vecindario que tienen el efecto de modificar la efectividad y la vigencia de esas restricciones?

## II

Las servidumbres en equidad contienen unas condiciones restrictivas constituidas unilateralmente por el urbanizador, que limitan las facultades de los futuros adquirentes. Éstas imponen unas limitaciones en cuanto al uso y las edificaciones permisibles con el propósito de "preservar la belleza, la comodidad y la seguridad del reparto residencial". *Sands* v. *Ext. Sagrado Corazón, Inc.*, 103 D.P.R. 826, 827 (1975). Véanse también: J. R. Vélez Torres, *Curso de Derecho Civil*, San Juan, Ed. Art Printing, 1983, T. II, pág. 416; *Colón* v. *San Patricio Corporation*, 81 D.P.R. 242, 250 (1959); II Casner *et al.*, *American Law of Property* Secs. 9.24–9.40, Cap. II, págs. 401–453 (1952); 5 *Williams, Am. Land Plan. Law* Sec. 154.01, págs. 311–312 (1985). Su existencia ha sido motivo de conflictos entre el derecho del propietario de ejercer pleno dominio sobre el bien inmueble y el de los vecinos de limitar el uso y las edificaciones en las fincas gravadas. Véase 4 *Rathkopf, The Law of Zoning and Planning* Sec. 57.02 (4ta ed. 1985).

---

([2]) La Iglesia también recurre para cuestionar la imposición de honorarios de abogado por temeridad y al declarar sin lugar una moción de reconsideración y/o relevo de sentencia. A la luz de *Lawton* v. *Rodríguez Rivera*, 35 D.P.R. 487, 495 (1926); *Figueroa* v. *Banco de San Juan*, 108 D.P.R. 680, 685 (1979), y *Díaz* v. *Tribunal Superior*, 93 D.P.R. 79, 89 (1966), estos señalamientos son inmeritorios.

Esta figura fue incorporada en nuestro ordenamiento jurídico por vía jurisprudencial mediante la decisión de *Glines et al.* v. *Matta et al.*, 19 D.P.R. 409 (1913). (³) Conforme la jurisprudencia posterior (⁴) dicha "figura ha ido evolucionando hasta encontrarla hoy con sustantividad propia, pero siempre conservando la independencia que le presta su origen y procedencia de un ordenamiento foráneo". Vélez Torres, *op. cit.*, pág. 416. Veamos su configuración actual en nuestra jurisdicción. (⁵)

██ Para su validez y eficacia se requiere que las limitaciones sean razonables, se establezcan como parte de un plan general de mejoras, consten de forma específica en el título y se inscriban en el Registro de la Propiedad. *Lawton* v. *Rodríguez Rivera*, 35 D.P.R. 487, 494 (1926) ; *Carrillo Norat* v.

---

(³) Para un análisis crítico a la incorporación de esta doctrina del Derecho anglosajón véanse: J. R. Vélez Torres, *Curso de Derecho Civil*, San Juan, Ed. Art Printing, 1983, T. II, págs. 399–416, y A. L. Díaz, *Problemas que enfrenta el registrador ante la calificación e inscripción de los nuevos derechos reales en Puerto Rico* en *Ponencias y comunicaciones presentadas al III Congreso Internacional de Derecho Registral*, Buenos Aires, Ed. Talleres Gráficos Mundial, 1978, T. II, págs. 463–468.

(⁴) *Lawton* v. *Rodríguez Rivera*, supra; *Macatee* v. *Biascochea*, 37 D.P.R. 1 (1927) ; *Fiol* v. *López de la Rosa*, 46 D.P.R. 749 (1934) ; *Santaella* v. *Purón*, 60 D.P.R. 552 (1942) ; *Baldrich* v. *Registrador*, 77 D.P.R. 739 (1954) ; *Pérez* v. *Pagán*, 79 D.P.R. 195 (1956) ; *Colón* v. *San Patricio Corporation*, 81 D.P.R. 242 (1959) ; *Castro Lund* v. *Registrador*, 102 D.P.R. 295 (1974) ; *Rodríguez* v. *Twin Towers Corp.*, 102 D.P.R. 355 (1974) ; *Sands* v. *Ext. Sagrado Corazón, Inc.*, 103 D.P.R. 826 (1975) ; *Carrillo Norat* v. *Camejo*, 107 D.P.R. 132 (1978).

(⁵) En España, para una discusión sobre el problema de las urbanizaciones privadas y las servidumbres a favor del propietario, véanse: J. Sapena Tomás, *Problemática jurídica de las urbanizaciones privadas*, 58 Rev. Der. Not. 63 (1967) ; R. De la Rica y Arenal, *La confusión de derechos en el ámbito registral* en *Estudios de Derecho Civil en honor del Prof. Castán Tobeñas*, Pamplona, Eds. Univ. Navarra, 1969, T. I, págs. 593–599; F. Jordano Fraga, *Prehorizontalidad y Servidumbre de Propietario*, 113 Rev. Der. Not. 123 (1981) ; R. De la Rica y Maritorena, *Las Servidumbres en el Registro de la Propiedad*, 53 Rev. C. Der. Inmob. 749 (1977) ; Resolución de 2 de abril de 1980 de la Dirección General de los Registros, 35 An. Der. Civ. 863–865 (1982).

*Camejo*, 107 D.P.R. 132, 137 (1978). Una vez son inscritas en el Registro de la Propiedad, se considera que las restricciones constituyen derechos reales oponibles *erga omnes*, lo que crea entre los predios afectados "una relación de servidumbres recíprocas, pues cada lote o solar es predio dominante, a la vez que sirviente, con relación a los demás lotes o solares de la urbanización". Vélez Torres, *op. cit.*, pág. 417; *Carrillo Norat* v. *Camejo*, supra, pág. 136.

■ Aunque en ocasiones las servidumbres son compatibles con la zonificación del estado, su propósito, creación, implantación y administración dependerá de que los dueños de los solares las hagan valer. Rathkopf, *op. cit.*, pág. 57-7. Por otro lado, el hecho de que se obtenga un permiso de construcción de la Administración de Reglamentos y Permisos "no tiene el efecto ni el alcance de anular restricciones privadas que resultan inconsistentes con el permiso".([6]) *Rodríguez* v. *Twin Towers Corp.*, 102 D.P.R. 355, 356 (1974); *Pérez* v. *Pagán*, 79 D.P.R. 195, 198 (1956); *Sands* v. *Ext. Sagrado Corazón, Inc.*, supra, pág. 831; *Colón* v. *San Patricio Corporation*, supra, págs. 262–269.([7])

■ Para hacer efectivos sus derechos e impedir las violaciones a las limitaciones impuestas, los dueños de predios su-

---

([6]) Es de notar que el Art. 16 del Reglamento de Planificación Núm. 4 de 1946, derogado por reglamentos posteriores, establecía que "cuando las disposiciones de este Reglamento resultaren en conflicto con cláusulas o limitaciones de convenios o contratos privados relacionados con aspectos de zonificación, regirán las más restrictivas". *Colón* v. *San Patricio Corporation*, 81 D.P.R. 242, 268–269 (1959).

([7]) En la jurisdicción norteamericana, ante los conflictos entre restricciones privadas y las normas de zonificación, generalmente prevalecen las primeras, particularmente si son anteriores en tiempo y más restrictivas. Véanse: D. Hagman, *Urban Planning and Land Development Control Law*, St. Paul, Minnesota, West Pub. Co., 1975, págs. 308–309 y casos allí citados; 4 *Rathkopf, The Law of Zoning and Planning* Secs. 57.01–57.02, págs. 57-1 a 57-14 (4ta ed. 1985); 5 *Williams, Am. Land Plan.* Sec. 154.11, págs. 322–323 (1985); L. Berger, *Conflicts Between Zoning Ordinances and Restrictive Covenants: A Problem in Land Use Policy*, 43 Neb. L. Rev. 449 (1964).

jetos a servidumbres en equidad tienen disponible el recurso de *injunction, Glines et al.* v. *Matta et al.,* supra. Contra tal recurso un demandado puede oponer todas la defensas que le otorgan los principios en equidad. *Colón* v. *San Patricio Corporation,* supra. Entre tales defensas encontramos: (1) consentimiento (*acquiescence*); (2) consciencia impura (*unclean hands*); (3) incuria (*laches*); (4) impedimento (*estoppel*). Casner, *op. cit.,* Sec. 9.38, págs. 440–444. Estas defensas son de carácter personal solamente oponibles a aquellos que han incurrido en dicha conducta.

■ Estas servidumbres pueden extinguirse o modificarse en los siguientes casos: (1) por acuerdo de los interesados; (2) por efecto del tiempo o por realizarse la condición si así se constituyeron; (3) por confusión; (4) por renuncia o abandono de los propietarios que reciben los beneficios de la servidumbre; (5) por expropiación forzosa si los gravámenes son incompatibles con el uso público del inmueble expropiado, y (6) "cuando cambios radicales del vecindario no sólo hacen la restricción irrazonable y opresiva para el dueño del predio sirviente, sino también destruyen el valor que la restricción tenía para el dueño del predio dominante, por lo cual resulta en verdad imposible alcanzar los fines que perseguía la servidumbre". *Colón* v. *San Patricio Corporation,* supra, págs. 261–262. Véanse además: Casner, *op. cit.,* Secs. 9.39–9.40, págs. 444–453; D. Hagman, *Urban Planning and Land Development Control Law,* St. Paul, Minnesota, West Pub. Co., 1975, págs. 302–304; Williams, *op. cit.,* Sec. 154.10, págs. 321–322.

■ La extinción de las servidumbres por motivo de cambios radicales puede ser alegada como defensa ante una acción de *injunction* o en una sentencia declaratoria solicitando que se declare la modificación o extinción de las restricciones. Reglas 59.1–59.6 de las de Procedimiento Civil de

1979.([8]) Ya desde 1927 habíamos reconocido dicha defensa en el caso de *Macatee* v. *Biascochea*, 37 D.P.R. 1, 10–11 (1927), cuando expresamos que el cambio ocurrido tiene que ser "de tal naturaleza que haya dejado sin valor sustancial el convenio o restricción en cuanto a la parte dominante residencial". En *Colón* v. *San Patricio Corporation*, supra, pág. 265, expusimos los requisitos para su configuración:

> (1) convertir la restricción en una carga irrazonable y opresiva para el dueño del predio sirviente; (2) destruir el valor que de otro modo tendría la restricción para los dueños de los predios dominantes; y (3) frustrar por completo y permanentemente el propósito u objeto de la restricción.

Al examinar las alegadas modificaciones "pueden considerarse tanto los cambios acaecidos dentro del área restringida como las alteraciones sobrevenidas en los terrenos que la rodean".([9]) Ibíd., pág. 265. Sin embargo, los cambios en

---

([8]) El recurso de la sentencia declaratoria es de extrema utilidad para determinar la vigencia de las servidumbres previo al inicio de una obra en un solar sujeto a las restricciones. Como expresáramos en *Colón* v. *San Patricio Corporation*, supra, pág. 263, "sería irracional obligar al propietario del predio sirviente a violar las restricciones para averiguar cuáles son sus derechos y determinar si, a pesar de los cambios en la vecindad, los tribunales pondrían en vigor mediante injunction las restricciones que impone una servidumbre en equidad. . . . El propósito de la sentencia declaratoria es precisamente obviar la inseguridad y los peligros de 'un salto en la oscuridad' cuando hay una controversia jurídica genuina entre las partes".

([9]) En la jurisdicción norteamericana, aunque existen opiniones en contrario, se reconoce la pertinencia de considerar los cambios ocurridos fuera del sector, sujeto a restricciones:

"Normalmente, la doctrina de cambios en el vecindario entra en juego sólo cuando hay modificaciones en el área restringida . . . . Sin embargo, la doctrina puede invocarse en casos de cambios fuera de los límites del área restringida que clara y seriamente afecten los márgenes del área." (Traducción nuestra.) Williams, *op. cit.*, Sec. 154.10, págs. 321–322.

Un tribunal estatal ha dicho:

Por otro lado, "[a]l determinar si ha ocurrido un cambio en el carácter del vecindario, el tribunal puede considerar tanto el área circundante como la subdivisión gobernada por las restricciones del convenio. Sin embargo, cambios ocurridos dentro del sector restringido son considerados de mayor importancia que los del área circundante. . . . Evidencia de cambios en las

los predios restringidos deben tener más peso que los ocurridos en los que los rodean. Si el área gravada no se ha deteriorado, de ordinario no debemos dejar sin efecto una restricción porque han ocurrido cambios en la periferia. *Semachko* v. *Hopko*, 35 Ohio App. 2d 205, 301 N.E.2d 560 (1973). De hecho, es lógico que los cambios ocurran precisamente en la periferia. Las servidumbres en equidad protegen e impiden que se transforme el vecindario:

> . . . si como consecuencia de variaciones en las condiciones fuera del área restringida a un lote o área se le permitiese liberarse de la cubierta protectora de restricciones residenciales únicamente, el dueño del lote colindante tendría entonces una acción igual . . . ante el Tribunal, y llegado el momento, todos los demás lotes . . . burlar[ían] y anular[ían] la restricción, y destruir[ían] el carácter esencialmente residencial del área total. (Traducción nuestra.) *Cowling* v. *Colligan*, 312 S.W.2d 943, 946 (Tex. 1958).

 Al considerar la posible extinción o modificación de las servidumbres se deben evaluar diversos factores. En primer lugar, se debe considerar el tamaño del área sujeta a las restricciones. Por ejemplo, un área pequeña es más vulnerable y sus solares están más expuestos a los embates de los cambios en la periferia que lo que ocurre en un sector más grande. También se debe considerar la localización de los cambios ocurridos con respecto al área restringida. Mientras

---

condiciones del área circundante pueden ser relevantes para determinar si internamente el sector restringido ha cambiado. Sin embargo, si el sector restringido no ha cambiado, no debe permitirse que los cambios ocurridos fuera del área abroguen la restricción en detrimento de los dueños de solares dentro de la subdivisión que confiaron en las restricciones". (Traducción nuestra.) *Exchange Nat. Bank of Chicago* v. *City of Des Plaines*, 336 N.E.2d 8, 17 (Ct. Apel. Ill. 1975). Véanse además: *Esso Standard Oil Co.* v. *Mullen*, 90 A.2d 192, 193 (Ct. Apel. Md. 1952) ; *Talles* v. *Rifman*, 53 A.2d 396, 398 (Ct. Apel. Md. 1947) ; *Crissman* v. *Dedakis*, 330 So. 2d 103, 104 (Ct. Dist. Fla. 1976) ; *Daniels* v. *Notor*, 133 A.2d 520 (Ct. Sup. Pa. 1957) ; *Pollack* v. *Bart*, 95 A.2d 864, 865–866 (Ct. Apel. Md. 1953) ; 4 A.L.R.2d 1111, Secs. 22–23, pág. 1170 *et seq.* .

más cerca son los cambios al área restringida, mayor el impacto sobre los solares afectados. Otros criterios que deben ser considerados son: el tipo de cambio; los cambios en la infraestructura, particularmente, en el patrón de tránsito; la extensión y naturaleza de los usos comerciales, industriales o institucionales en áreas circundantes; el valor de los terrenos residenciales en comparación con los comerciales; la conducta de las partes y sus predecesores, así como el término por el cual se impusieron las restricciones. *Lebo* v. *Johnson*, 349 S.W.2d 744, 749 (Ct. Apel. Tex. 1961); *Simon* v. *Henrichson*, 394 S.W.2d 249, 255 (Ct. Apel. Tex. 1965); *Holmquist* v. *D–V, Inc.*, 563 P.2d 1112 (Ct. Apel. Kan. 1977); *Normus Realty Corp.* v. *Gargano*, 237 N.Y.S.2d 648 (1963); *Noyes* v. *McDonnell*, 398 P.2d 838 (Okl. 1965); Hagman, *op. cit.* pág. 303 n. 45; Casner, *op. cit.*, Sec. 9.39, págs. 444–448; Comentario, *Termination of Servitudes: Expanding the Remedies for "Changed Conditions"*, 31 UCLA L. Rev. 226 (1983). Al evaluar todas estas circunstancias, el tribunal debe asegurarse de que las restricciones continuarán siendo beneficiosas para los dueños de los solares afectados.

Otro factor que se debe considerar es el cambio ocurrido en la zonificación del área y sus alrededores. En nuestras circunstancias geográficas el Estado ha elaborado unos instrumentos de planificación para un desarrollo integral del uso de terrenos e inversiones que también deben ser considerados al poner en vigor estas restricciones.([10]) Véanse: *Bard* v. *Rose*, 203 Cal. App. 2d 232, 21 Cal. Rptr. 382 (1962); *Crissman* v. *Dedakis*, 330 So. 2d 103 (Ct. Dist. Fla. 1976); *Boschelli* v. *Villa Park Trust & Savings Bank*, 23 Ill. App. 3d 82, 318 N.E.2d 527 (1974); *Rofe* v. *Robinson*, 93 Mich. App. 749, 286 N.W.2d 914 (1980). Los reglamentos de zonificación

---

([10]) Aunque estos instrumentos sirven para identificar el interés público según formulado por el Estado, éste no es el caso apropiado para establecer su valor en comparación con los otros.

y su instrumentación pueden ser considerados para determinar, junto a los otros factores, si ha ocurrido un cambio radical en el vecindario. *Shuford* v. *Asheville Oil Company*, 243 N.C. 636, 91 S.E.2d 903 (1956). Por ejemplo, en *Owens* v. *Camfield*, 1 Ark. App. 295, 614 S.W.2d 698, 700 (1981), la Corte de Apelaciones de Arkansas señaló:

> El hecho de que la propiedad del apelado esté zonificada como área comercial es de primordial consideración . . . . Aunque la regla general es que los convenios restrictivos no se abrogan, destruyen o debilitan cuando el área es rezonificada, la rezonificación es una circunstancia tendiente a demostrar que por lo menos, a juicio del municipio, el carácter del vecindario dentro de la zonificación variaba o varió de residencial a comercial para propósitos de determinar si los convenios restrictivos ya no deben ponerse en vigor debido a que las condiciones han variado. (Traducción nuestra.)

Además, al evaluar estos cambios los tribunales no pueden ignorar que a través de las excepciones y variaciones a la zonificación las entidades planificadoras también afectan el desarrollo del vecindario. Por lo tanto, debemos considerar cuál ha sido la política de la Administración de Reglamentos y Permisos al conceder tanto los permisos regulares como los emitidos a través de la facultad discrecional de conceder excepciones y variaciones a los reglamentos vigentes. Aunque las revisiones en la zonificación deben ser consideradas, no pueden ser determinantes. Rathkopf, *op. cit.*, pág. 57-10. Véase *St. Luke's Evan. Luth. Ch. of Country Homes* v. *Hales*, 13 Wash. App. 483, 534 P.2d 1379 (1975).

El objetivo debe ser una evaluación de todos estos factores para determinar si los cambios ocurridos han resultado en la imposición de unas restricciones obsoletas que sean injustas, irrazonables y opresivas para el dueño del predio sirviente.

## III

Las servidumbres que afectan a los solares de la Urbanización Villa Caparra fueron impuestas mediante escritura pública que a su vez fue inscrita en el Registro de la Propiedad. Las prohibiciones que se imponían en cuanto a uso, cabida y forma de construcción eran razonables y obedecían a un plan para desarrollar y mantener dicho sector como un área estrictamente residencial. *Lawton* v. *Rodríguez Rivera*, supra, pág. 494. Los terrenos que adquirió la Iglesia Católica para la construcción del gimnasio auditorio estaban gravados con dichas prohibiciones, por formar parte de la finca original. Además, al segregarse y venderse por primera vez les fueron impuestas las mismas prohibiciones. ([11])

Alega la recurrente que dichas servidumbres debieron declararse modificadas por los cambios ocurridos en el vecindario. Examinada la prueba documental, ([12]) entendemos que hay amplia base en el récord, que sostiene la determinación del tribunal de instancia que concluyó que no hubo tales cambios. Dicho sector, donde ubican los terrenos de la Iglesia, es de carácter residencial, con tal propósito se inició su urbanización por los esposos González-Giusti y así se ha mantenido.

---

([11]) Al venderse originalmente dichos solares se les impuso en cada escritura de compraventa las mismas restricciones que a la finca original. La cláusula en cuestión en cada una de las escrituras decía lo siguiente:

"— — — D.—En la parcela vendida mediante este documento solamente se podrá construir una casa residencia, de una sola vivienda, de concreto, de un precio no menor de Tres Mil Dólares; y dicha casa deberá ser construida a una distancia no menor de quince pies de la calle en que dé su frente. — — —

"— — — Las anteriores restricciones se inscribirán en el Registro de la Propiedad para gravar el inmueble vendido y obligará al comprador, sus herederos o cesionarios, y el cumplimiento de dichas restricciones podrá ser exigido por los vendedores o por cualquier otra persona, personas o entidades que adquieran parte alguna de la finca principal anteriormente descrita." *Exhibits* 7–10, Parte Demandante.

([12]) La misma consistió mayormente de fotografías, copias de escrituras y planos.

Actualmente se encuentra clasificado como un Distrito R-1, el cual es de baja densidad poblacional, que se establece, entre otros, "para preservar el carácter residencial de áreas desarrolladas", Reglamento de Zonificación, Sec. 7.01.

Un análisis de todo el expediente nos convence de que las recurrentes no han demostrado que hubo cambios radicales en el área que modificaran el carácter del vecindario tan sustancialmente como para hacer injustas, irrazonables y opresivas las servidumbres. La prueba no demostró que en los solares gravados hayan ocurrido violaciones a las servidumbres o que se destinen para usos prohibidos por los dueños originales, en forma tal que pueda decretarse su modificación o extinción. Los únicos solares dentro de la finca original que se utilizan para fines no residenciales pertenecen a la Academia. Su uso ha sido conforme con los propósitos originales de la familia González-Giusti de cederle o venderle unos terrenos a la Iglesia para la construcción de una capilla y una escuela.

Las recurrentes tampoco probaron que los desarrollos comerciales a lo largo de la Carretera Estatal Núm. 2 y en la periferia de la urbanización, hicieran irrazonables, injustas u opresivas las condiciones restrictivas. ([13]) No se probó una alteración en el tráfico de la urbanización, o en el movimiento de personas como resultado de estos desarrollos. Tampoco se demostró que hubo una modificación significativa en la densidad poblacional, tanto en el sector restringido como en los periferales. La única prueba ofrecida por las recurrentes es insuficiente para modificar o extinguir las servidumbres en equidad, por constituir cargas irrazonables, injustas y opresivas para los predios sirvientes.

█ Todo lo contrario, si algo se demostró, es que mediante estas condiciones restrictivas los residentes de Villa

---

([13]) Éstas no nos han colocado en posición de tomar conocimiento judicial de los cambios ocurridos en la periferia de la urbanización alrededor de la Carretera Estatal Núm. 2. Regla 11 de Evidencia.

Caparra han logrado proteger su urbanización de los azotes del desarrollo comercial de todo el sector. Por lo tanto, los vecinos continúan recibiendo los beneficios de las servidumbres. Reiteramos, que esta defensa —cambios en el vecindario— requiere que los mismos "sean de *carácter radical* y permanente, e *impidan sustancialmente* la consecución de las ventajas y de los beneficios establecidos a favor de los predios dominantes". (Énfasis suplido.) *Colón* v. *San Patricio Corporation*, supra, pág. 264. En todo caso, es en el momento actual cuando dichas prohibiciones cobran mayor valor, ya que pueden evitar el establecimiento de obras y usos en contravención de las mismas. Pudiendo todavía beneficiarse los predios dominantes de las servidumbres establecidas en dicha urbanización, no procede en derecho declarar su modificación o extinción.

■ Por otro lado, el hecho de que se obtuviera un permiso de A.R.P.E. para la construcción del gimnasio no tenía el efecto de derogar las servidumbres que gravaban dichos terrenos, porque "la mera concesión de un permiso por la Junta de Planificación [A.R.P.E.] no tiene el efecto ni el alcance de anular restricciones privadas que resulten inconsistentes con el permiso concedido". *Rodríguez* v. *Twin Towers Corp.*, supra, pág. 356; *Colón* v. *San Patricio Corporation*, supra, pág. 267; *Sands* v. *Ext. Sagrado Corazón, Inc.*, supra, pág. 832. Si se entendía que las servidumbres estaban extinguidas, se debió utilizar el recurso de la sentencia declaratoria y así "obviar la inseguridad y los peligros de 'un salto en la oscuridad' ", *Colón* v. *San Patricio Corporation*, supra, pág. 263, y no iniciar las obras cuando, ([14]) como bien expresaron las propias recurrentes, existían aún "controversias latentes con respecto a tal construcción". Con tal actuación, demostrativa de poca prudencia, asumieron los riesgos de tales actos con todas sus

---

([14]) Es preciso resaltar el hecho de que las recurrentes fueron emplazadas un día antes de ser efectivo el permiso de A.R.P.E.

consecuencias. *Glines et al.* v. *Matta et al.,* supra, págs. 418–419.

Aunque el propósito de la Iglesia Católica y de la Academia de construir una cancha auditorio y ampliar sus facilidades físicas es legítimo y encomiable, el resultado es contrario a las restricciones que gravan estas propiedades. La parte recurrente tiene otras alternativas disponibles para lograr su objetivo. Entre éstas debe reexaminar el proyecto para satisfacer las preocupaciones de los vecinos. De esta manera podrían convencerles de que den su consentimiento y permitan un proyecto alterno o una variación del propuesto.

Por tales razones, *entendemos que actuó correctamente el tribunal a quo al emitir el injunction permanente que prohíbe la construcción del gimnasio.*

*Se dictará la correspondiente sentencia.*

El Juez Presidente Señor Pons Núñez y los Jueces Asociados Señor Rebollo López y Señora Naveira de Rodón se inhibieron.