*793 TEXTO COMPLETO DE LA SENTENCIA
Oportunamente, el señor Roberto Nacer Villariño junto a otros residentes de la urbanización Sabanera presentan un escrito de apelación ante este Tribunal en el cual nos solicitan la revisión de la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas, el 24 de abril de 2006 y notificada el 2 de mayo del corriente. Mediante dicha Sentencia, el Tribunal de Primera Instancia declara sin lugar la solicitud de interdicto preliminar y permanente presentada por los demandantes-apelantes al concluir que la política adoptada por la Junta de Directores de Sabanera para reglamentar el uso de las facilidades recreativas de la urbanización no contraviene las servidumbres en equidad.
Con la comparecencia de las partes, este Tribunal, por los fundamentos aquí expresados, procede a revocar la Sentencia emitida por el Tribunal de Primera Instancia.
I
Relación de hechos
La Junta de Directores de la urbanización Sabanera, el 25 de octubre de 2005 adopta como política que los integrantes de los equipos representativos de Sabanera sean todos residentes bonafide de la urbanización. La anterior política fue publicada mediante circular el 28 de octubre de 2005. Así las cosas, algunos residentes de la urbanización solicitaron una audiencia ante la Junta de Directores y expusieron su preocupación sobre la alegada ilegalidad de la política adoptada.
Ante la falta de éxito en sus reclamos, el señor Roberto Nacer Villariño, junto a un grupo de residentes de la urbanización Sabanera (en adelante “los residentes”), presentan el 24 de febrero de 2006 una Petición de Injunction ante el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante “TPF), en la que, en síntesis, solicitan que se expida un injunction, y en consecuencia, se ordene a la Junta de Directores a permitir a los residentes y a sus invitados disponer libremente de la utilización de las canchas de tenis. Básicamente, el argumento de los residentes es que las condiciones restrictivas de la urbanización disponen que las propiedades comunes son para el uso y disfrute de los titulares, familiares e invitados, por lo que, a la Junta de Directores acoger una política en la que excluye a los invitados de los residentes de formar parte de los equipos representativos de la misma, se les está violando sus derechos al goce, uso y disfrute de las propiedades, según establecido en las servidumbres en equidad. De igual forma, los residentes solicitaron la imposición de costas, gastos y honorarios de abogados.
El TPI celebra la vista de injunction el 7 de marzo de 2006 en la que las partes llegan a unos acuerdos y estipulan la prueba documental. La posición esbozada por los residentes es que la Asociación de Residentes no tiene la facultad para imponer restricciones, ya que estaría violando los derechos propietarios y de futuros adquirientes, y que la determinación de la Junta de Directores constituye una variación al uso determinado en las escrituras. Por su parte, Sabanera Homeowners Association, Inc. t/c/c como la Asociación de Residentes (en adelante “Asociación de Residentes”) sostiene que la Junta de Directores tiene autorización para reglamentar el *794 uso y disfrute de las facilidades; además, lo único que se ha reglamentado es que los equipos representativos de la urbanización deben estar compuestos por residentes de la urbanización.
A tenor con lo acordado en la vista de injunction, las partes presentan sendos Memorandos de Derecho. Los residentes arguyen que la adopción de la política adoptada por la Junta de Directores infringe los derechos propietarios de los residentes al contravenir las servidumbres en equidad. Asimismo, señalan que la adopción de la política establecida tiene el efecto de enmendar las condiciones restrictivas sin llevar a cabo el procedimiento adecuado para ello, es decir, mediante el convenio de todos los propietarios en una asamblea general de residentes y mediante escritura pública inscribible en el Registro de la Propiedad. De otra parte, la Asociación de Residentes sostiene que la política establecida fue sometida a votación; además, ésta indica que tiene la facultad para reglamentar el uso de las propiedades comunes. Igualmente, la Asociación de Residentes apunta que la Junta de Directores es el órgano al que se le otorga la autoridad de interpretar las condiciones restrictivas, y que el proceso para revocar a ésta, se conduce mediante referéndum o asamblea. De igual forma, la Asociación de Residentes expresa que la política establecida va dirigida exclusivamente a reglamentar todas las disciplinas deportivas en cuanto a la composición de los equipos representativos en Sabanera sin proscribir que los residentes puedan llevar invitados a las facilidades recreativas; o sea, la política establecida no contraviene las servidumbres en equidad.
Posterior a ello y a una serie de mociones presentadas ante el TPI, éste emite Sentencia el 24 de abril de 2006 y notificada el 2 de mayo de 2006. Mediante la referida Sentencia, el TPI determina que la política establecida no está en contravención a las servidumbres en equidad, por lo que no procede el injunction solicitado.
Para ello, el TPI analiza los argumentos de las partes, el Reglamento Interno de la Urbanización y la Escritura Número 279 de 6 de mayo de 1996 ante la Notario Marilyn Burgos Márquez titulada “Amendment and Restatement of Deed of Declaration of Rights Restrictions, Conditions and Constitution of Restrictive Convenants and Establishments of Provisions for Sabanera Estates’’’ (en adelante “Escritura Núm. 279”). El TPI determina que las facilidades recreativas forman parte de las propiedades comunes de Sabanera para el uso y disfrute de los dueños, sus familiares, invitados y arrendatarios sujeto al pago de cuotas de mantenimiento y a las reglas de operación adoptadas por la Asociación de Residentes. A su vez, concluye que la actuación de la Junta de Directores de implementar la política concerniente a la composición de los equipos representativos de Sabanera para que sus integrantes sean residentes bonafide de la urbanización está comprendida dentro de las facultades concedidas a la Junta de Directores. De igual modo, el TPI determina que el propósito de la política adoptada es reglamentar el uso de las facilidades recreativas lo que no trastoca ni modifica las condiciones restrictivas existentes, ya que se permite a los residentes, a sus familiares e invitados el uso y disfrute de las facilidades. Además, el TPI concluye que la Junta de Directores es el organismo facultado para interpretar las condiciones restrictivas, y sus determinaciones son finales y obligatorias. Igualmente, el TPI resuelve que los residentes debieron optar por el procedimiento de referéndum establecido en las escrituras y en el Reglamento Interno de la Urbanización para rechazar la política adoptada.
No conforme con la determinación emitida por el TPI, los residentes presentan el recurso de apelación ante nuestra consideración.
II
Señalamiento de errores
Los residentes señalan, en extracto, que se equivoca el TPI al avalar la política adoptada por la Junta de Directores a pesar de que ello contraviene y/o altera las condiciones restrictivas y es contrario al Derecho aplicable, y al determinar que procede el mecanismo de referéndum para revocar a la Junta de Directores conforme los hechos ante su consideración.
*795 Ill
Derecho aplicable
Para atender la controversia ante nuestra consideración es necesario auscultar lo que constituyen las servidumbres en equidad. Estas son "cláusulas restrictivas 'a beneficio de los presentes y futuros adquirentes' que imponen cargas o gravámenes especiales, como parte de un plan general de mejoras para el desarrollo de una urbanización residencial en esa finca.... ”. Asoc. Vec. Urb. Huyke v. Bco. Santander, 157 D.P.R. 521, 534-535 (2002), citando a Colón v. San Patricio Corp., 81 D.P.R. 242, 250 (1959). Son cargas o gravámenes reales que, una vez inscritas en el Registro de la Propiedad, constituyen derechos reales oponibles erga omnes. Asoc. Vec. Urb. Huyke v. Bco. Santander, supra; Asoc. V. Villa Caparra v. Iglesia Católica, 117 D.P.R. 346, 353 (1986).
Las servidumbres en equidad son consideradas como un contrato entre las partes que acuerdan gravar sus propiedades para delimitar su uso o el tipo de edificación que se puede efectuar sobre éstas o porque adquirentes posteriores de la propiedad gravada, conociendo las restricciones inscritas en el Registro de la Propiedad se someten a las mismas. Residentes Parkville Sur, Residentes Parkville Norte y Otros v. Margarita Díaz Luciano y Otros, Opinión 28 de abril de 2003, 159 D.P.R. _, 2003 J.T.S. 73, a la pág. 957.
Como regla general, esas condiciones restrictivas o servidumbres en equidad son constituidas unilateralmente por el urbanizador y limitan las facultades de los futuros adquirentes, con el propósito de preservar la belleza, la comodidad y la seguridad del reparto residencial, según éste es concebido por el urbanizador. Sabater v. Corporación de Desarrollo Económico, 140 D.P.R. 497, 506 (1997); Asoc. V. Villa Caparra v. Iglesia Católica, supra, a la pág. 351; Sands v. Ext. Sagrado Corazón, Inc. 103 D.P.R. 826, 827 (1975).
Lo importante de las servidumbres en equidad o las condiciones restrictivas establecidas en un desarrollo es que éstas informen claramente a los nuevos adquirientes y terceros sobre lo que está o no permitido hacer. Cond. S.J.H. Centre v. P.R.F., Inc., 133 D.P.R. 488, 504 (1993); Asoc. Vec. Urb. Huyke v. Bco. Santander, supra, a las págs. 538-539. En la interpretación de las condiciones restrictivas es trascendental conocer cuál fue el fin que se perseguía al constituir las mismas. Residentes Parkville Sur, Residentes Parkville Norte y Otros v. Margarita Díaz Luciano y Otros, supra, a las págs. 957 y 958.
La jurisprudencia ha establecido que la validez de las condiciones restrictivas dependerá de que: (1) dichas limitaciones sean razonables, (2) se hayan establecido como parte de un plan general de mejoras, (3) consten de forma específica en el título, y (4) se inscriban en el Registro de la Propiedad. Residentes Parkville Sur, Residentes Parkville Norte y otros v. Margarita Díaz Luciano y otros, supra, a la pág. 956; Sabater v. Corporación de Desarrollo Económico, supra, a la pág. 506; Asoc. V. Villa Caparra v. Iglesia Católica, supra, a la pág. 352; Carrillo v. Camejo, 107 D.P.R. 132, 137 (1978); Sands v. Ext. Sagrado Corazón, Inc., supra, a la pág. 827; Lawton v. Rodríguez, 35 D.P.R. 487, 494 (1926).
Una vez inscritas en el Registro de la Propiedad, se considera que las restricciones constituyen derechos reales oponibles a todos los titulares; ello incluye a todo presente y futuro adquiriente de la propiedad gravada por la servidumbre en equidad. Así pues, no se debe permitir actuaciones contrarias a las condiciones restrictivas impuestas, y cuando se lleve a cabo un acto contrario a la condición restrictiva, ello equivale a un daño auto infligido; es decir, el único causante del daño es el infractor de la condición restrictiva. Residentes Parkville Sur, Residentes Parkville Norte y Otros v. Margarita Díaz Luciano y Otros, supra, a la pág. 957; Asoc. V. Villa Caparra v. Iglesia Católica, supra, a la pág. 353, citando a José R. Vélez Torres, Curso de Derecho Civil, San Juan, Ed. Art Printing, 1983, T.II, pág. 416; Asoc. Vec. Urb. Huyke v. Bco. Santander, supra, a la pág. 536; Carrillo v. Camejo, supra, a la pág. 136.
*796 Para hacer efectivos sus derechos e impedir el incumplimiento con las limitaciones impuestas, los dueños de las propiedades vecinas tienen disponible el recurso de injunction. Asoc. V. Villa Caparra v. Iglesia Católica, supra, a la pág. 354; Colón v. San Patricio Corp., supra, a la pág. 259. Para tener derecho a dicho remedio, si se trata de una reclamación por incumplimiento de condiciones restrictivas, no es necesario probar, de hecho, que se han sufrido daños o perjuicios sustanciales; basta demostrar la violación a la restricción. Asoc. Vec. Urb. Huyke v. Bco. Santander, supra, a la pág. 536; Pérez v. Pagán, 79 D.P.R. 195, 199-200 (1956).
El demandado, por su parte, puede oponer contra la solicitud de injunction todas las defensas tradicionales, tales como: (1) el consentimiento (acquiescence); (2) la conciencia impura (unclean hands); (3) la incuria (laches); y (4) el impedimento (estoppel). Residentes Parkville Sur, Residentes Parkville Norte y Otros v. Margarita Díaz Luciano y Otros, supra, a la pág. 956; Asoc. v. Villa Caparra v. Iglesia Católica, supra, a la pág. 354.
Un demandado puede, además, alegar como defensa ante dicha acción de injunction que las servidumbres en equidad se han extinguido o modificado: (1) por acuerdo de los interesados; (2) por efecto del tiempo o por realizarse la condición si así se constituyeron; (3) por confusión; (4) por renuncia o abandono de los propietarios que reciben los beneficios de la servidumbre; (5) por expropiación forzosa si los gravámenes son incompatibles con el uso público del inmueble expropiado; y (6) "cuando cambios radicales del vecindario no sólo hacen la restricción irrazonable y opresiva para el dueño del predio sirviente, sino también destruyen el valor que la restricción tenía para el dueño del predio dominante, por lo cual resulta en verdad imposible alcanzar los fines que perseguía la servidumbre". Asoc. Vec. Urb. Huyke v. Bco. Santander, supra, a las págs. 536-537; Asoc. v. Villa Caparra v. Iglesia Católica, supra, a la pág. 354; Colón v. San Patricio Corp., supra, a las págs. 261-265. Sin embargo, las servidumbres en equidad no pueden ser modificadas ni alteradas a través de un reglamento de la urbanización. Asociación Playa Húcares v. Rodríguez, Sentencia 24 de febrero de 2006, 166 D.P.R. _, 2006 J.T.S. 39, a la pág. 998.
La función de los tribunales consiste en, una vez se reconoce la validez y vigencia de la servidumbre en equidad, hacer cumplir a cabalidad las mismas. Ello tiene como finalidad preservar la voluntad de las partes plasmada en las cláusulas restrictivas de la servidumbre en equidad, a menos que éstas sean contrarias a la ley, a la moral o al orden público. Residentes Parkville Sur, Residentes Parkville Norte y Otros v. Margarita Díaz Luciano y Otros, supra, a la pág. 957; Colón v. San Patricio Corp., supra, a la pág. 266.
IV
Análisis de los errores senalados
Con eltrasfondo antes discutido sobre las servidumbres en equidad, procedemos a examinar y analizar las posiciones de las partes en el caso ante nuestra consideración para determinar si, efectivamente, el TPI incurre en los errores señalados por los residentes. Por lo tanto, analizaremos los documentos estipulados por ambas partes.
En el presente caso, la Escritura Núm. 279 establece, en lo pertinente, en su cláusula quinta, inciso (c) como sigue:
“(C) ‘Common Property’ shall mean and refer to real and/or personal property which is actually transferred to, enjoyed by, deeded to or leased by the Association and designated as ‘Common Properties ’. The term ‘Common Properties' shall also include any real or personal property which is designated as ‘Common Property’. All “Common Property” are to be devoted to and intended for the common use and enjoyment of the Owners, their families, guests of the Owners, persons occupying accommodations of Owners on a tenant basis, and subject to the fee schedules and operating rules adopted by the Association. ” (Énfasis suplido)
*797 La cláusula anterior dispone que la propiedad común es para uso y disfrute de los dueños, sus familiares e invitados, sujeto al pago de cuotas y a las reglas operacionales adoptadas por la Asociación de Residentes. De igual forma, la Escritura Núm. 279 reconoce el derecho a los dueños de propiedades a disfrutar de las propiedades comunes. Entre las propiedades comunes se encuentran las facilidades recreativas de la urbanización que son objeto del presente recurso ante nuestra consideración. Asimismo, la Escritura Núm. 279 establece y autoriza a la Asociación de Residentes a proveer los servicios relacionados con la recreación, deportes, manualidades, y programas de interés para los miembros, niños e invitados. 
De igual forma, el Reglamento Interno de la Urbanización, en su Artículo VIII inciso (d), establece y reitera que la Junta de Directores tendrá la obligación de:
“...to adopt and publish rules and regulations governing the use of Common Properties, and facilities and the personal conduct of members and their tenants and guests thereon;... ”.
Es decir, le corresponde a la Asociación de Residentes por medio de la Junta de Directores adoptar y publicar las reglas y políticas operacionales concernientes al uso de las propiedades comunes de la urbanización.
Por su parte, la Escritura Núm. 279 define el procedimiento de Referéndum al indicar que:

“(l) Referendum shall mean and refer to the power of all or some specific portion of the members to vote by mailed ballots on certain actions by the Board of Directors of the Association as provided in this Deed and/or the Association By-Laws. ” 

A su vez, el Reglamento Interno de la Urbanización especifica para qué se emplea el mecanismo de Referéndum al establecer que:

“Members to Have Power of Referendum in Certain Instances. The Members, or some specific portion thereof, shall have the power to approve or reject certain actions proposed to be taken by the Association by Referendum including, without limitation, whether the Association shall accept any offer by the Company to convey to the Association any “Common Properties", the levy by the Association of any special assessment in excess of those authorized by the Covenants, and the addition of deletion of functions or services with the Association is authorized to perform. In the event fifty-one percent (51%) or more of the votes actually returned to the Association within the specified time shall be deemed to “pass” and the action voted upon will be deemed to have been authorized by the Members; provided, however, that if a higher percentage vote required to “pass” shall be specifically expressed herein or in the Covenants, that the higher percentage shall control in that instance. The Board of Directors may not undertake any action requiring a Referendum without complying with the provisions therefore. In the event of a dispute as to whether a Referendum is required, the following action may be taken: Within Sixty (60) days after the adoption by the Directors of any action which is, in the opinion of the Members, subject to a Referendum, a petition signed by not less than twenty-five (25%) percent of the total Membership of the Association may be filled with the Secretary of the Association requesting that any such action be either repealed or submitted to a vote of the Member. ”

Del texto anterior se puede apreciar claramente que el esquema establecido para el procedimiento de Referéndum consiste de un poder que tienen los residentes, en ciertas circunstancias, para rechazar o aprobar acciones de la Asociación de Residentes. A estos efectos, el Reglamento Interno de la Urbanización enumera las siguientes situaciones en las que se puede emplear el mecanismo de Referéndum cuando la Asociación de Residentes : (1) se proponga aceptar cualquier oferta de la Compañía para el traspaso de cualquier propiedad común; (2) desee imponer una recaudación especial en exceso a las establecidas en las condiciones restrictivas; y (3) desee aprobar cualquier adición o disminución en las funciones o servicios que está autorizada a realizar. *798 No obstante, esa enumeración no es taxativa, el propio Reglamento Interno de la Urbanización aclara que ese poder de los residentes de invocar el Referéndum no está limitado a estas circunstancias particulares. Sin embargo, de la lectura del texto anterior se puede colegir que el poder de invocar el mecanismo de Referéndum le compete a los residentes, quienes de entender que procede dicho mecanismo, están facultados a someter una petición a tales efectos con el aval de no menos del veinticinco (25%) por ciento de los residentes en el término de sesenta (60) días a partir de la acción que se desea impugnar. En fin, ante una actuación de la Asociación que los residentes quieran impugnar o aprobar, éstos tienen a su favor el mecanismo del Referéndum sin que ello limite o soslaye el derecho de estos residentes a invocar el procedimiento de injunction cuando sea necesario, no exista un remedio rápido y eficaz para defender sus derechos, el daño alegado no puede ser adecuadamente satisfecho mediante la utilización de los remedios legales disponibles o simplemente se entienda que se están violando las servidumbres en equidad. Por consiguiente, este Tribunal concluye que en el caso de autos, los residentes, a pesar de tener a su disposición el proceso de Referéndum para cuestionar actuaciones de la Asociación, no estaban obligados a finalizar el mismo para evitar lo que para ellos constituye una alteración a las servidumbres en equidad.
En resumen, un análisis de las citadas disposiciones en el caso ante nuestra consideración demuestran que la Escritura Núm. 279 establece que la propiedad común de la urbanización Sabanera es para uso y disfrute de los dueños, sus familiares e invitados, ello sujeto a dos condiciones: la primera, el pago de las cuotas, y la segunda, el cumplimiento con las reglas operacionales adoptadas por la Asociación de Residentes. No cabe duda, y así lo reconocen los residentes, de que la Asociación de Residentes está facultada para implantar aquellas reglas operacionales que propenden el uso y conservación de las propiedades comunales, incluyendo las facilidades recreativas. Ciertamente, ello no le confiere la facultad a la Asociación de Residentes de alterar el uso y disfrute por los dueños, familiares e invitados de las propiedades comunes, en este caso, las facilidades recreativas, con el establecimiento de la política en controversia.
En el caso ante nuestra consideración, la Escritura Núm. 279 establece el derecho al uso y disfrute de las propiedades comunes por los titulares, familiares e invitados de éstos. De esta manera, se reconoce no tan sólo el derecho al disfrute y uso de las facilidades recreativas por los titulares, sino que también a los familiares e invitados de éstos. Dicho uso y disfrute no puede ser limitado de forma alguna por la política adoptada por la Asociación.
La política adoptada establece que los integrantes de los equipos representativos de Sabanera sean residentes de la urbanización, por lo que contraviene la servidumbre en equidad establecida en la Escritura Núm. 279. En la medida que se requiere de forma absoluta que el equipo representativo de la urbanización sea compuesto por residentes de la misma, se contraviene y limita la servidumbre en equidad que dispone expresamente y reconoce el derecho al disfrute y uso de las facilidades recreativas por los familiares e invitados de los titulares. La política en controversia atenta contra la utilización de las facilidades recreativas y limita el uso de las mismas por los invitados y familiares de los titulares debido a que los excluye de pertenecer a los equipos que emplean dichas facilidades. Como consecuencia de la implantación de la política en controversia, se priva de forma indirecta a los invitados de los residentes de disfrutar junto a éstos de un ambiente competitivo dentro de las facilidades comunes de la urbanización.
V
Disposición
Por los fundamentos antes esbozados, se revoca la Sentencia emitida por el Tribunal de Primera Instancia.
Lo acordó y manda el Tribunal y lo certifica la señora Secretaria del Tribunal.
*799 Mildred Ivonne Rodriguez Rivera
Secretaria Interina del Tribunal de Apelaciones
ESCOLIOS 2007 DTA 20
1. Véase Escritura Núm. 279, cláusula séptima, Sección B conjuntamente con cláusula octava, Sección A.
2. Véase Escritura Núm. 279 décima cláusula, Sección B, inciso (i).
3. Véase Escritura Núm. 279, cláusula quinta inciso (1).