La Juez Asociada Señora Rodríguez Rodríguez,
emitió la opinión del Tribunal.
(En reconsideración)
El presente recurso llega ante nuestra consideración por vía de una solicitud de reconsideración. El 20 de noviembre de 2007, por estar igualmente divididos, confirmamos la sentencia del Tribunal de Apelaciones que dejó sin efecto una orden de injunction preliminar dictada por el Tribunal de Primera Instancia.
A pesar de que dispusimos del presente caso mediante sentencia, ésta estuvo acompañada de varias opiniones particulares. De ellas se deducen las dos controversias principales que debemos atender en reconsideración. En primer término, debemos aclarar si la petición de injunction preliminar en este caso se rige por la Regla 56 de Procedimiento Civil (sobre remedios provisionales en ase-guramiento de sentencia), o si, por el contrario, aplica la Regla 57 de dicho cuerpo normativo, que versa sobre el recurso de injunction.
En segundo término, debemos examinar si abusó de su discreción el Tribunal de Primera Instancia al conceder la orden de injunction preliminar luego de celebrar una vista en la que no recibió cierta prueba testifical. Es decir, nos *309 corresponde examinar la discreción que poseen los tribuna-les de instancia para limitar el tipo de evidencia que se admitirá en una vista de injunction preliminar.
I
Las partes en el presente caso nos solicitan reconsiderar la sentencia emitida el 20 de noviembre de 2007. La peti-cionaria, Asociación de Vecinos de Villa Caparra Sur (Aso-ciación de Vecinos) nos solicita resolver que sú pedimento de remedio provisional en aseguramiento de sentencia se rige por la Regla 56 de Procedimiento Civil, disposición reglamentaria que provee, para la expedición de una orden para hacer o . desistir de hacer ■ cualesquiera actos específicos. 32 L.P.R.A. Ap. III. Esta regla, además, exime al peticionario del pago de una fianza cuando, entre otras instancias, un documento público o privado, firmado ante una persona autorizada para administrar juramentos, acredite que la obligación es legalmente exigible. . 32 L.P.R.A. Ap. Ill, R. 56.3. Además, la Asociación de Vecinos nos solicita paralizar la construcción realizada por la Aso-ciación de Fomento Educativo (AFE) mientras se dilucida el pleito de injunction permanente en los méritos.
Por su parte, AFE nos solicita aclarar que la petición de injunction preliminar de la Asociación de Vecinos se rige por las disposiciones de la Regla 57 de Procedimiento Civil, 32 L.P.R.A. Ap. III. En particular, aduce que el Tribunal de Primera Instancia otorgó el remedio de injunction prelimi-nar bajo la Regla 57 de Procedimiento Civil y que simple-mente se equivocó al aplicar la disposición de la Regla 56.3, que exime al peticionario del requisito de prestar fianza cuando el derecho reclamado surge de un documento público.
Luego de analizar los argumentos de las partes, acoge-mos la petición de reconsideración presentada por la Aso-ciación de Vecinos y reconsideramos nuestro anterior *310 dictamen. Por las razones que detallaremos a continua-ción, revocamos la sentencia del Tribunal de Apelaciones y reinstalamos, en todos sus efectos, la orden de injunction preliminar dictada por el Tribunal de Primera Instancia en el presente caso.
Veamos los hechos que engendran la controversia que nos atañe resolver.
II
Como adelantamos, el presente caso versa sobre una so-licitud de injunction preliminar presentada por la deman-dante y peticionaria Asociación de Vecinos para hacer valer las servidumbres en equidad que gravan las propiedades sitas en la Urbanización Villa Caparra Sur. En síntesis, la referida servidumbre restringe el tipo de estructura que se puede construir en el lugar a “una casa residencia de una sola vivienda”.(1) Véase Apéndice, Primera Pieza, págs. 230-231.
En aras de vindicar la servidumbre en equidad antes reseñada, el 3 de noviembre de 2005 la Asociación de Veci-nos presentó una demanda de interdicto preliminar y permanente. Posteriormente, la Asociación de Vecinos pre-sentó una petición de injunction preliminar como remedio provisional en aseguramiento de sentencia.
La referida solicitud de injunction preliminar desem-bocó en un complicado trámite judicial ante el foro prima-rio y ante el foro apelativo intermedio. Ello provocó que el Tribunal de Apelaciones interviniera en el caso en dos oca-siones para atender los planteamientos de AFE sobre defi-ciencias en la expedición de la orden de injunction prelimi- *311 nar y, posteriormente, para examinar reclamos sobre la legalidad de la determinación del foro primario de celebrar una vista de injunction luego de que el foro apelativo inter-medio anuló una primera orden de paralización por defi-ciencias en la notificación. Tras estos trámites apelativos, el tribunal de instancia celebró la vista de injunction preliminar.
En la vista, el tribunal escuchó los argumentos de las partes y recibió prueba documental en apoyo a sus planteamientos. Durante los procedimientos surgió una controversia sobre si el tribunal debía recibir prueba testifical. En primer término, los abogados de AFE solici-taron que el tribunal de instancia celebrara una vista evi-denciaría e indicaron que tenían testigos en sala para de-clarar si el tribunal lo permitía.(2) Véase transcripción de la vista, Apéndice, Segunda Pieza, pág. 579. Sin embargo, el honorable juez del tribunal de instancia se reservó el fallo final sobre la petición de AFE y determinó que escu-charía los argumentos de las partes.(3) Id., pág. 581.
Posteriormente, el representante legal de la Asociación de Vecinos solicitó autorización para presentar el testimo-nio de su perito ingeniero. Ante ello, el honorable juez de-terminó que no era necesario recibir prueba testifical para determinar si procedía emitir una orden bajo la Regla 56 de Procedimiento Civil para paralizar la obra. Véase Tras-cripción de la vista, Apéndice, Segunda Pieza, pág. 711. Adujo que contaba con abundante prueba documental para determinar si procedía paralizar la obra de construcción en la residencia J-42. Por lo tanto, determinó que celebraría una vista argumentativa y citó a las partes, junto a sus peritos ingenieros, a una inspección ocular que se celebra-ría el 31 de julio de 2006.
*312 Luego de realizar la inspección ocular de la residencia J-42 en la Urbanización Villa Caparra Sur y de proveerles a las partes una oportunidad para suplementar sus argu-mentos, el tribunal de instancia emitió una orden de injunction preliminar. Mediante su orden, el foro primario paralizó las obras de construcción realizadas en la propie-dad J-42 y determinó que no procedía imponer el pago de una fianza, según dispone la Regla 56 de Procedimiento Civil.
Inconforme, AFE acudió al Tribunal de Apelaciones. Dicho foro apelativo intermedio revocó la orden de paralización. Determinó que había errado el tribunal de instancia al emitir la orden de paralización luego de cele-brar una vista argumentativa en la que no le permitió a AFE presentar su prueba testifical y cierta prueba documental. Además, determinó que el tribunal de instan-cia debió celebrar una vista evidenciaría en la cual las par-tes pudieran presentar prueba testifical y documental.
El 22 de noviembre de 2006 la Asociación de Vecinos presentó ante este Tribunal un recurso de certiorari y una moción en auxilio de jurisdicción. El 5 de diciembre de 2006 declaramos "no ha lugar” ambas peticiones. En recon-sideración, le concedimos un término a la parte recurrida para mostrar causa por la cual no debíamos expedir el pre-sente recurso. En auxilio de nuestra jurisdicción, paraliza-mos las obras de construcción.
Así las cosas, el 20 de noviembre de 2007 confirmamos la sentencia del Tribunal de Apelaciones. Inconforme, el 10 de diciembre de 2007 la Asociación de Vecinos presentó una oportuna moción de reconsideración. AFE presentó la suya en esa misma fecha.
Luego de analizar las mociones de reconsideración pre-sentadas en el presente caso, acogemos la petición de la Asociación de Vecinos. Estando en posición de hacerlo, pro-cedemos a reconsiderar nuestro dictamen emitido el 20 de noviembre de 2007.
*313 III
Como asunto apremiante, la presente controversia nos requiere demarcar los planos en los que se desenvuelven las Reglas 56 y 57 de Procedimiento Civil. Ello, en vista de que ambas reglas proveen para la concesión de una orden de hacer o desistir de hacer como remedio en asegura-miento de sentencia.
Sobre este asunto, AFE nos solicita excluir el presente caso del entorno de la Regla 56 de Procedimiento Civil. Por su parte, la Asociación de Vecinos postula que por la natu-raleza misma de este pleito, en el que se pretende vindicar una servidumbre en equidad debidamente inscrita y cuya legalidad y vigencia ha sido confirmada por este Tribunal,(4) procede aplicar las disposiciones de la Regla 56 so-bre remedios provisionales.
La Regla 56 de Procedimiento Civil faculta a los tribunales a expedir una orden de hacer o desistir de hacer, como orden provisional en aseguramiento de sentencias. Esta orden, en esencia, cumple un propósito análogo al del injunction preliminar.(5) Esto es, pretende mantener el statu quo, mientras se dilucida el pleito en sus méritos.
En su parte pertinente, la Regla 56.5 de Procedimiento Civil establece que “[n]o se concéderá ninguna orden ... para hacer o desistir de hacer cualquier acto específico, sin una. notificación a la parte adversa”. 32 L.P.R.A. Ap. III. Sin embargo, contempla la expedición de una orden ex parte, cuando se acredite mediante declaración jurada, que el peticionario sufrirá daños o pérdidas irreparables si se notifica y celebra una vista. Id. Por su parte, la Regla 56.3 autoriza la expedición de un remedio *314 provisional sin necesidad de prestar fianza cuando surja de un documento público o privado, firmado ante una persona autorizada para administrar juramento, que la obligación es legalmente exigible; cuando se trate de un litigante in-solvente exento por ley del pago de aranceles y derechos,(6) o cuando se gestione el remedio luego de dictada la sentencia. 32 L.P.R.A. Ap. III.
Por otro lado, la Regla 57 de Procedimiento Civil gobierna las pautas procesales del mecanismo de injunction. Así, la Regla 57.1 establece que no se expedirá un injunction preliminar sin antes notificar a la parte adversa. Además, dicha regla permite consolidar la vista de injunction preliminar con el juicio en los méritos. 32 L.P.R.A. Ap. III. Finalmente, según las disposiciones de la Regla 57.3, sólo se dictará una orden de injunction preliminar mediante la prestación de fianza “por la cantidad que el tribunal considere justa, para el pago de las costas y daños en que pueda incurrir o que haya sufrido cualquier parte que haya resultado indebidamente puesta en entredicho o restringida”. 32 L.P.R.A. Ap. III.
De lo anterior se deduce una evidente duplicidad de me-canismos procesales para solicitar una orden de injunction preliminar como medida para asegurar la efectividad de la sentencia que el tribunal en su día podrá dictar. Esta du-plicidad repercute de forma dramática en la determinación de la imposición de fianza puesto que, arm cuando ambas reglas proveen mecanismos análogos para obtener un mismo fin, la Regla 56 permite que el tribunal, a modo de excepción, exima al solicitante del pago de fianza, mientras que del texto de la Regla 57 no surge dicha facultad.
*315 Veamos el historial de ambas reglas y el origen del me-canismo de injunction en nuestro ordenamiento.
IV
A. La Regla 56 de Procedimiento Civil se incorporó a nuestro ordenamiento procesal civil en 1958. Dicha regla le permite a los tribunales conceder remedios provisionales en todo pleito para “asegurar la efectividad de las sentencias y reivindicar ... no s[ó]lo la justicia debida a las partes, sino también la dignidad de la función judicial”. Román v. S.L.G. Ruiz, 160 D.P.R. 116, 120 (2003), citando a Stump Corp. v. Tribunal Superior, 99 D.P.R. 179, 183-84 (1970). “Su única limitación es que la medida sea razonable y adecuada al propósito esencial de la misma, que es garantizar la efectividad de la sentencia que en su día pudiera dictarse.” F.D. Rich Co. v. Tribunal Superior, 99 D.P.R. 158, 176 (1970).
Un estudio de la génesis de esta regla sobre remedios provisionales demuestra que dicha disposición encuentra su antecedente directo en la Ley para Asegurar la Efecti-vidad de Sentencias de 1 de marzo de 1902 (Ley de 1902).(7) En su Sec. 1, la Ley de 1902 disponía que “[t]oda persona que demandare en juicio el cumplimiento de una obligación, podrá obtener una resolución del tribunal que conociere de la demanda, adoptando las medidas proceden-tes, según los casos, para asegurar la efectividad de la sen-tencia que haya de dictarse en el caso de prosperar la ac-ción ejercitada”. 1902 Leyes de Puerto Rico 178-179.
Al amparo de la Ley de 1902, los remedios disponibles dependían del tipo de obligación de la que se tratara. Así, por ejemplo, en el caso de una obligación de entregar una *316 cosa determinada, procedía la prohibición de enajenar, en el caso de una obligación de entregar una suma de dinero, procedía un embargo y, en el caso de una obligación de no hacer, procedía la prohibición de hacer.(8) See. 2 de la Ley 1902. Además, la Ley de 1902 confería a los tribunales la facultad de adoptar otras medidas para asegurar la efecti-vidad de una sentencia. Id.
Con las disposiciones de la Ley de 1902 como norte, en 1958 se aprobó la Regla 56 de Procedimiento Civil. Me-diante dicha regla, se amplió la disponibilidad de los reme-dios provisionales en aseguramiento de sentencia. Estos se hicieron extensivos a cualquier pleito, sin importar el tipo de obligación que se reclamara. Suárez Martínez v. Tribunal Superior, 85 D.P.R. 544, 550 (1962). Véase, además, Anteproyecto de Reglas de Enjuiciamiento Civil para el Tribunal General de Justicia de 1954, Comité Consultivo de Reglas de Enjuiciamiento Civil, pág. 142.
A grandes rasgos, la Regla 56 concretó el legado de la Ley de 1902 al recoger las medidas dispuestas en la anti-gua Ley de 1902, sin limitar su aplicación a la naturaleza de la reclamación. Anteproyecto de Reglas de Enjuicia-miento Civil, op. cit., pág. 147. Tras la adopción de esta regla, entre las medidas provisionales disponibles en todo pleito se encuentran la prohibición de enajenar, la sindicatura y la orden para hacer o desistir de hacer. 32 L.P.R.A. Ap. III, R. 56.1.
Al incluir la orden de hacer o desistir de hacer entre los posibles remedios en aseguramiento de sentencia, la Regla *317 56 de Procedimiento Civil integró el injunction como me-dida provisional según dispone el Art. 677 del Código de Enjuiciamiento Civil y las disposiciones sobre asegura-miento de sentencias contenidas en el Art. 2(d) de la Ley para asegurar la efectividad de las sentencias de 1902. An-teproyecto de Reglas de Enjuiciamiento Civil, op. cit, pág. 146. En virtud de ello, la Regla 56 le confirió a los tribuna-les la facultad de emitir un injunction preliminar con el propósito de mantener el statu quo, mientras se dilucida el pleito en sus méritos. Véanse: Mun. de Ponce v. Gobernador, 136 D.P.R. 776, 784 (1994); Cobos Liccia v. DeJean Packing Co., Inc., 124 D.P.R. 896 (1989).
En fin, el tracto histórico de la Regla 56 demuestra que ésta asentó en nuestro ordenamiento el injunction preliminar como un mecanismo en aseguramiento de sentencia que está disponible en todo tipo de pleito, sin importar la naturaleza de la obligación de la que se trate. Al igual que todos los mecanismos en aseguramiento se sentencia, siempre que se cumpla alguna de las excepciones dispuestas en la Regla 56.3, se puede conceder sin necesidad de prestar fianza.
No empece el hecho de que esta regla está vigente desde 1958, no hemos tenido ocasión de examinar los requisitos que deben regir la concesión de una orden de hacer o de-sistir de hacer bajo esta regla. Tampoco hemos delimitado su ámbito de aplicación en un pleito como el que nos ocupa en el que, se solicita el cumplimiento con una servidumbre en equidad. Este ejercicio requiere, sin embargo, examinar la figura del injunction.
B. La figura anglosajona del injunction es producto de la coexistencia en Inglaterra y Estados Unidos del sistema de derecho común y la equidad. Véanse: A.P.P.R. v. Tribunal Superior, 103 D.P.R. 903, 908 (1975); D. Rivé Rivera, Recursos Extraordinarios, 2da ed., San Juan, Facultad de *318 Derecho de la U.I.P.R., 1996, págs. 1-5.(9) A la luz de esta dicotomía, el injunction cobró vida en el derecho común inglés al amparo de los poderes del Canciller del Rey de Inglaterra de conceder aquellos remedios legales que los tribunales de derecho común no podían atender. Véanse: Rivé Rivera, op. cit.; 11A Wright, Miller and Kane, Federal Practice and Procedure: Civil 2d Sec. 2944, pág. 82 (1995).
El peculiar origen del remedio de injunction influyó en el estándar de adjudicación de éste. Así, en virtud del he-cho que la actuación de las cortes en equidad al otorgar un injunction redundaba en una intromisión en las facultades de las cortes de derecho común, el injunction se concibió como un remedio extraordinario para los casos en que los promoventes no pudieran obtener un remedio adecuado en las cortes de derecho común. Véanse: J. Leubsdorf, The Standard for preliminary injunctions, 91 (Núm. 3) Harv. L. Rev. 525, 527 (enero 1978); Wright, Miller and Kane, supra. Naturalmente entonces, el estándar para la concesión de este remedio legitimó la adopción de los requisitos de ausencia de un remedio adecuado en ley y daño irreparable. Véanse: Leubsdorf, supra, pág. 530; Wright, Miller and Kane, supra, págs. 81-86.
A pesar de que en nuestra jurisdicción no existe dicoto-mía entre derecho común y equidad, nuestro ordenamiento adoptó la figura del injunction mediante legislación en 1902. Posteriormente, la Ley de 8 de marzo de 1906 derogó la Ley de Injunction de 1902 y estableció los contornos bá-sicos de dicha figura. Actualmente, tanto el Código de En-juiciamiento Civil de 1933 (32 L.P.R.A. sees. 3521-3524 y 3561-3566), como la Regla 57 de Procedimiento Civil de 1979, rigen los aspectos sustantivos y procesales del injunction. A su vez, la Regla 57 de Procedimiento Civil *319 corresponde al texto de la Regla 65 de Procedimiento Civil federal.
Sobre la adopción de esta figura en nuestro ordenamiento, en Glines et al. v. Matta et al., 19 D.P.R. 409, 415-416 (1913), indicamos que “[l]as cortes de Puerto Rico no tienen jurisdicción general en equidad tal como la misma se aplica en las cortes de Inglaterra y de Estados Unidos, pero tienen por virtud de la Ley de Injunction jurisdicción para impedir las infracciones de los derechos”. En decisio-nes posteriores adoptamos los criterios normativos que ri-gen la concesión de este remedio y cuyos orígenes y propó-sitos se remontan a la dicotomía entre derecho común y equidad. Por tanto, al adoptar los criterios que deben guiar la discreción de los tribunales, nos hemos remitido a la normativa federal sobre el injunction preliminar.
A estos efectos, establecimos en P.R. Telephone Co. v. Tribunal Superior, 103 D.P.R. 200, 202 (1975), que la concesión de un injunction preliminar depende de los criterios siguientes:
[(a)] la naturaleza de los daños que pueden ocasionárseles a las partes de concederse o denegarse el injunction;
[(b)] su irreparabilidad o la existencia de un remedio ade-cuado en ley;
[(c)] la probabilidad de que la parte promovente prevalezca [en los méritos];
[(d)] la probabilidad de que la causa se torne académica ...;
[(e)] el posible impacto sobre el interés p[ú]blico .... (Énfasis nuestro.) Véanse, además: Misión Ind. P.R. v. J.P. y A.A.A., 142 D.P.R. 656, 679-680 (1997); Mun. de Ponce v. Gobernador, supra, pág. 784; Cobos Liccia v. DeJean Packing Co., Inc., supra, pág. 902.
Al aplicar los criterios antes enumerados, hemos reiterado que la “concesión o denegación [de un injunction] exige que la parte promovente demuestre la ausencia de un remedio adecuado en ley”. Misión Ind. P.R. v. J.P. y A.A.A., supra, pág. 681. Además, hemos enfatizado la necesidad de que la parte promovente demuestre la existen- *320 cia de un daño irreparable “que no puede ser adecuadamente satisfecho mediante la utilización de los remedios legales disponibles”. íd. Véanse, además: Com. Pro Perm. Bda. Morales v. Alcalde, 158 D.P.R. 195, 205 (2002); Loíza Sugar Company v. Hernáiz y Albandoz, 32 D.P.R. 903, 906 (1924).
En Cruz v. Ortiz, 74 D.P.R. 321, 328 (1953), indicamos que “[p]rocede un injunction para evitar daños irrepara-bles o una multiplicidad de procedimientos” y clarificamos que “[e]l concepto de evitación de daños irreparables o de una multiplicidad de procedimientos constituye un aspecto de la regla básica de que procede un injunction cuando el remedio existente en el curso ordinario de la ley es inadecuado”.(10) (Citas omitidas.) íd. Véase, además, Com. Pro Perm. Bda. Morales v. Alcalde, supra, pág. 204.
Conforme a lo anterior, el injunction provisto en la Re-gla 57 de Procedimiento Civil se asentó en nuestro ordena-miento como un remedio extraordinario. En virtud de ello, en nuestros pronunciamientos le hemos conferido vitalidad al requisito de daño irreparable y a la exigencia de ausen-cia de un remedio adecuado.(11)
No empece el hecho de que hemos validado el requisito de daño irreparable y la exigencia de ausencia de remedio adecuado en ley, también hemos establecido y reiterado que, en los casos en que se vindican las disposicio- *321 nes de una servidumbre en equidad mediante un injunction permanente, no es necesario probar daños reales o perjuicios sustanciales. Asoc. Vec. Urb. Huyke v. Bco. Santander, 157 D.P.R. 521, 537 (2002); Colón v. San Patricio Corporation, 81 D.P.R. 242, 259 (1959); Pérez v. Pagán, 79 D.P.R. 195 (1956); Santaella v. Purón, 60 D.P.R. 552 (1942). Véase, además, Glines et al. v. Matta et al., supra, pág. 416. Ello, en vista de que el injunction es el remedio ade-cuado para hacer valer las disposiciones de una servidumbre en equidad. Glinés et al. v. Matta et al., supra; Colón v. San Patricio Corporation, supra, págs. 253-254; Rodríguez et al. v. Gómez et al., 156 D.P.R. 307, 312 (2001); Asoc. V. Villa Caparra v. Iglesia Católica, 117 D.P.R. 346, 353-354 (1986); Cruz v. Ortiz, supra. Así, al amparo de esta norma-tiva, hemos rechazado la aplicación del criterio de daño irreparable y hemos expresado que cuando se vindica una servidumbre en equidad sólo se debe probar la violación a la restricción para que el promovente tenga derecho al remedio interdictal. Pérez v. Pagán, supra; Santaella v. Purón, supra, págs. 558-559.
Al examinar si procede otorgar un injunction permanente en el contexto de un pleito sobre una servidumbre en equidad, hemos centrado nuestro análisis en si en efecto ha ocurrido una violación a la servidumbre, sin considerar si la parte está expuesta a sufrir un daño irreparable o si la parte carece de un remedio adecuado en ley. Por ejemplo, en Rodríguez et al. v. Gómez et al., supra, resolvimos que procedía conceder un injunction permanente para prohibir cierto uso comercial que contravenía las disposiciones de la servidumbre en equidad que gravaba el predio en controversia. Al así resolver, prescindimos del criterio de daño irreparable y nos limitamos a examinar si el uso propuesto violaba la condición restrictiva del proyecto residencial. Razonamiento análogo aplicamos en nuestras decisiones en Asoc. Vec. Urb. Huyke v. Bco. Santander, supra, y Residentes Parkville v. Díaz, 159 *322 D.P.R. 374 (2003). En ambos casos examinamos si los usos impugnados eran contrarios a las respectivas servidum-bres en equidad en controversia y ponderamos si dichas condiciones restrictivas habían perdido vigencia.
En fin, el hecho de que al vindicar las disposiciones de una servidumbre en equidad el promovente solicita preci-samente un injunction permanente convierte en imperti-nente el criterio de daño irreparable. De igual modo, es inmaterial examinar si existe otro remedio adecuado en ley. Adviértase que la concepción tradicional del daño irreparable postula que se trata de un daño que no puede ser adecuadamente compensado mediante un remedio en ley. Véase Com. Pro Perm. Bda. Morales v. Alcalde, supra, pág. 204. Tomando esta acepción del daño irreparable, es for-zoso concluir que en un pleito sobre una servidumbre en equidad, no procede estimar si existen otros remedios, pues el remedio que procede es el injunction. Como corola-rio de ello, el injunction preliminar deja de ser subsidiario frente a otros remedios en ley como, por ejemplo, un reme-dio en daños. En esa medida, el injunction preliminar se convierte en un remedio ordinario que se divorcia de los requisitos tradicionalmente asociados a la dicotomía entre ley y equidad, y adquiere una flexibilidad que lo desvincula de dicho pasado.
V
La anterior discusión demuestra que tanto la Regla 56 de Procedimiento Civil, como la Regla 57 de dicho cuerpo normativo vislumbran la concesión de un injunction preliminar que pretende mantener el statu quo, mientras se dilucida el pleito en los méritos. Como vimos, la Regla 56 le permite a los tribunales emitir una orden de hacer o desistir de hacer en todo pleito. Además, en ciertas circunstancias permite que ésta se expida sin previa prestación de fianza. Por su parte, la Regla 57 vislumbra la concesión de *323 un injunction preliminar e impone el requisito de presta-ción de fianza sin excepción expresa y exige el cumpli-miento con los requisitos adoptados en P.R. Telephone Co. v. Tribunal Superior, supra.
Según hemos indicado, en el presente caso se debate cuál de estas dos reglas rige el injunction preliminar soli-citado por la Asociación de Vecinos. En vista de que esta-mos ante un pleito en el que el injunction permanente está disponible como un remedio ordinario, resolvemos que la solicitud de injunction preliminar presentada por la peti-cionaria, se debe tramitar al amparo de la Regla 56. Ha-bida cuenta de que los requisitos de daño irreparable y ausencia de remedio adecuado en ley no forman parte de un pleito de injunction permanente en el que se vindican las disposiciones de una servidumbre en equidad debida-mente inscrita en el Registro de la Propiedad, es innecesa-rio incluirlos en el estándar de adjudicación de un injunction preliminar.
Conforme a la norma firmemente establecida por este Tribunal, en el presente pleito los peticionarios no tienen que probar la existencia de daño irreparable o la ausencia de un remedio adecuado en ley. En virtud de ello, la pre-sente reclamación es cónsona con el mecanismo de injunction preliminar disponible en todo pleito en virtud de las disposiciones flexibles de la Regla 56.(12) Es decir, en el presente caso adviene innecesario cumplir con dos de los *324 requisitos tradicionalmente exigidos por la Regla 57 en el contexto del tradicional injunction preliminar, por lo que procede aplicar las disposiciones de la Regla 56 sobre re-medios provisionales en aseguramiento de sentencia. Es forzoso concluir entonces que nada impedía que el Tribunal de Primera Instancia dictara la orden de injunction preli-minar al amparo de dicha regla. (13)
Nuestra conclusión, sin embargo, no implica que debamos abandonar nuestros pronunciamientos anteriores en tomo a los criterios que deben guiar la discreción de los tribunales al atender una solicitud de injunction preliminar como la que nos ocupa. Ello, en vista de que la concesión de un injunction preliminar al amparo de la Regla 56 se puede convertir en una limitación provisional del derecho de la parte afectada por la orden a la libre disposición de sus bienes. Freeman v. Tribunal Superior, 92 D.P.R. 1, 25 (1965). El tribunal, por lo tanto, debe garantizar al reclamante pero no oprimir al demandado o causarle innecesarias dificultades. Id.
Es decir, entendemos necesario preservar la riqueza de algunos de los criterios adoptados en P.R. Telephone Co. v. Tribunal Superior, supra, sobre el estándar de adjudicación de un injunction preliminar al amparo de la Regla 57 *325 de Procedimiento Civil. Por lo tanto, al adjudicar una soli-citud de injunction preliminar como la que nos ocupa, los tribunales deben tomar en cuenta la naturaleza de los da-ños que pueden ocasionárseles a las partes; la probabilidad de que la parte promovente prevalezca en los méritos; la probabilidad de que la causa se tome académica y el posi-ble impacto sobre el interés público. Id. Además, los tribu-nales deberán examinar el tiempo que tardó el peticionario en presentar su reclamo y el efecto del tiempo en los inte-reses de las partes según la justicia sustancial.
Debemos puntualizar, además, que preservar el requisito de daño irreparable en este caso, visto como uno que no se puede resarcir adecuadamente en una acción en daños y perjuicios —como se sugiere en la opinión disidente— ignora que la esencia de la determinación en un pleito como el que nos ocupa es sopesar el daño que se le causaría al demandante si se niega erróneamente el interdicto y el daño que se la causaría al demandado si dicho remedio se concede erróneamente. Más importante aún, al emitir un injunction preliminar, el tribunal debe examinar si el daño al que está expuesto el peticionario no se podrá prevenir de forma eficaz luego de un juicio en los méritos. Ello claramente se diferencia de la acepción del daño irreparable a la cual la opinión disidente se aferra.
Finalmente, debemos recordar que el remedio provisional de injunction preliminar pretende evitar daños adicio-nales mientras el tribunal evalúa el caso en los méritos. Además, permite al tribunal preservar la efectividad de su dictamen judicial final y asegura que el remedio final sea eficaz. Como consecuencia, en un pleito como el que nos ocupa, el tribunal debe prevenir aquel tipo de daño que no se puede remediar en una etapa posterior del litigio.
Con lo antes expuesto como norte, procedemos a atender los méritos de la moción de reconsideración que tenemos ante nuestra consideración.
*326 VI
Al revocar la orden de injunction preliminar emitida por el Tribunal de Primera Instancia, el Tribunal de Apelacio-nes resaltó que dicho foro primario había errado al deter-minar que no procedía admitir prueba testifical y cierta prueba documental en la vista de injunction. En nuestra Sentencia de 20 de noviembre de 2007 confirmamos dicha determinación. Sin embargo, luego de examinar la prueba documental que obra en autos y de la cual se sirvió el foro primario para conceder el remedio provisional en asegura-miento de sentencia, hemos decidido reconsiderar nuestro dictamen por entender que el Tribunal de Primera Instan-cia no abusó de su discreción al determinar que era inne-cesario recibir prueba testifical en la vista de remedio provisional. Como corolario de ello resolvemos que erró el Tribunal de Apelaciones al dejar sin efecto la referida or-den de injunction preliminar. Explicamos nuestra determinación.
A. La Regla 56.2 de Procedimiento Civil dis-pone que la parte afectada por una orden de hacer o desistir de hacer, tendrá derecho a una notificación adecuada y a la celebración de una vista. 32 L.P.R.A. Ap. III. Sin embargo, dicha regla no define la discreción que poseen los tribunales para limitar el tipo de prueba necesaria para examinar los méritos del remedio solicitado.
Al respecto, debemos puntualizar que el propósito de una vista de remedio provisional es atender un incidente dentro de un pleito, conforme a los intereses de las partes y a los hechos del caso. Como corolario de ello, al celebrar la vista, le corresponde al tribunal hacer un balance entre los intereses del peticionario y el daño que una orden de injunction preliminar puede causarle a la parte que la sufre. En esta tarea, el tribunal posee discreción para limitar el tipo de evidencia que se admitirá en la *327 vista, siempre que le provea a las partes una oportunidad justa y adecuada de presentar prueba y argumentar.
Del mismo modo, conforme a la naturaleza de una orden provisional en aseguramiento de sentencia, la determina-ción de si el tribunal debe recibir prueba oral dependerá de los hechos sustantivos del caso y de la prueba documental que obra en el expediente. Por lo tanto, ante un plantea-miento de violación al derecho a presentar prueba en una vista de injunction preliminar bajo la Regla 56 de Procedi-miento Civil, nos corresponde evaluar si las partes tuvie-ron una oportunidad adecuada de esbozar sus plantea-mientos y de presentar prueba.
Un análisis de los documentos que obran en el expe-diente revela que, al otorgar la orden de injunction preli-minar que nos ocupa, el tribunal de instancia tuvo ante su consideración la prueba siguiente: dos certificaciones regís-trales que acreditan la inscripción en el Registro de la Pro-piedad de las servidumbres en equidad que gravan la pro-piedad J-42 y el tiempo durante el cual AFE ha sido dueña de dicha propiedad; varias fotografías sobre la construcción realizada en la propiedad J-42; documentos que acreditan las pérdidas económicas que AFE enfrentaría de parali-zarse la construcción mediante una orden bajo la Regla 56; documentos que demuestran la magnitud y dimensiones de la obra realizada; documento que demuestra que para 1996, la Asociación de Vecinos incluyó a la Sra. Eneida Alvarez (dama alegadamente afiliada a AFE) como resi-dente de la propiedad J-42, y declaraciones juradas de va-rias mujeres que han residido en la propiedad J-42 por varios años, incluyendo las declaraciones de las Sras. Carmen Socorro Garay Rosa y Myriam Camacho González.
Finalmente, antes de dictar la orden de injunction pre-liminar solicitada por la Asociación de Vecinos, el tribunal de instancia escuchó los argumentos de las partes en torno a sus teorías y defensas. También inspeccionó la propiedad en controversia.
*328 Lo anterior demuestra que el Tribunal de Primera Ins-tancia recibió prueba sobre la existencia de la servidumbre en equidad, sobre las pérdidas que la demandada y recu-rrida sufriría de paralizarse su obra, sobre la magnitud y naturaleza de las instalaciones que AFE construye en la propiedad en controversia y sobre la alegada incuria de los demandantes y peticionarios. Ello demuestra que el foro primario recibió abundante prueba sobre los asuntos me-dulares para determinar si procedía el injunction prelimi-nar solicitado.
No obstante, AFE argumenta que el tribunal de instan-cia violentó su derecho al debido proceso de ley puesto que se negó a recibir la prueba siguiente: el testimonio del Ing. Juan Riestra, quien ilustraría al tribunal sobre los daños qué AFE sufriría si se paralizara la obra; el testimonio del Ing. Camilo Almeyda, quien testificaría que la propiedad que AFE construye cumple con las servidumbres en equi-dad, y finalmente, el testimonio de las Sras. Myriam Camacho González, Eneida Alvarez y Carmen Socorro Garay, damas afiliadas al Opus Dei, quienes relatarían el tiempo que han vivido o vivieron en la propiedad J-42 para esta-blecer que la parte demandante incurrió en incuria al ha-cer valer la servidumbre en equidad frente a AFE. No tiene razón AFE en su argumento.
Aun cuando el tribunal se negó a recibir tanto el testi-monio del Ing. Juan Riestra sobre los daños que AFE su-friría de paralizarse la obra, como el testimonio del Ing. Camilo Almeyda, quien testificaría que la propiedad que AFE construye cumple con la servidumbre en equidad; surge de los documentos que obran en autos que el tribunal recibió prueba sobre esos extremos. Así, el tribunal recibió prueba sobre las pérdidas que AFE podría sufrir. Además, en la inspección ocular observó la construcción en contro-versia, discutió los planos con los ingenieros de las partes y escuchó los argumentos del ingeniero Almeyda sobre las características de la propiedad que AFE construye. Véase Apéndice, Tercera Pieza, págs. 876-883.
*329 Del mismo modo, en la vista celebrada los días 20 y 21 de julio de 2006, el tribunal de instancia escuchó los argu-mentos de AFE sobre la alegada incuria de la Asociación y recibió prueba sobre dicha defensa. Véase Transcripción de la vista, Apéndice, Tercera Pieza, págs. 800-801. A estos efectos, AFE argüyó que es dueña de la propiedad J-42 desde 1983 y que en dicha residencia convive un grupo de mujeres solteras afiliadas a AFE desde el año 1987. En apoyo a dicha defensa, presentó un documento con el pro-pósito de demostrar que, para 1996, la Asociación de Veci-nos incluyó a la Sra. Eneida Alvarez (dama supuestamente afiliada a AFE) como residente de la propiedad J-42. Ade-más, el tribunal de instancia tuvo ante su consideración una moción de desestimación y sentencia sumaria presen-tada el 14 de diciembre de 2005, en la cual AFE esgrimió sus planteamientos sobre la alegada incuria de la Asocia-ción.de Vecinos.(14) También obran en autos las declaracio-nes juradas de varias mujeres que han vivido en la propie-dad J-42. Entre éstas se encuentran las declaraciones juradas de las señoras Carmen Socorro Garay Rosa y Myriam Camacho González, a quienes AFE ofreció como testigos en la vista. (15) Véanse los autos originales del tribunal de primera instancia, Tomo Núm. 2.
En virtud de todo lo antes expuesto, forzoso es concluir que el tribunal de instancia no privó a.AFE de su derecho a la celebración de una vista a los fines de presentar prueba *330 a su favor. Contrario a la determinación del Tribunal de Apelaciones, resolvemos que AFE tuvo una oportunidad adecuada de presentar prueba en torno a la solicitud de injunction preliminar de la Asociación de Vecinos.
Al respecto, la opinión disidente aduce que el debido proceso de ley requiere la celebración de una vista eviden-ciaría antes de conceder o denegar una orden de injunction preliminar bajo la Regla 56, y concluye que esto no ocurrió en el presente caso, pues el tribunal se negó a recibir cierta prueba testifical. Para ello, invoca nuestros pronuncia-mientos en Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 D.P.R. 881 (1993). Sin embargo, la opinión disidente no toma en consideración que las exigencias del debido pro-ceso de ley dependen de las circunstancias particulares de cada caso. Así, el principio fundamental del debido proceso de ley es el derecho de toda persona a ser oído antes de ser despojado de un interés protegido. Rivera Rodríguez & Co. v. Lee Stowell, etc., supra, pág. 889. Como vimos, el tribunal de instancia le proveyó amplia oportunidad a los recurridos para ser oídos, por lo que se satisficieron las exigen-cias del debido proceso de ley. Los recurridos tuvieron amplia oportunidad para presentar su prueba y enfren-tarse a la prueba presentada por los peticionarios. Además, el tribunal celebró una inspección ocular en la cual escuchó los planteamientos de los peritos de las partes. Es ineludi-ble concluir, entonces, que los recurridos no sufrieron una privación de sus intereses sin el debido proceso de ley.
Procedemos, entonces, a examinar si abusó de su discre-ción el tribunal de instancia al conceder el injunction pre-liminar solicitado por la Asociación de Vecinos.
B. Una lectura de la resolución del Tribunal de Pri-mera Instancia demuestra que, al dictar la orden de injunction que nos ocupa, dicho foro primario: (1) examinó la naturaleza de los daños que las partes sufrirían de conce-derse el remedio provisional solicitado; (2) auscultó la pro- *331 habilidad de que la peticionaria prevaleciera en los méri-tos; (3) consideró la probabilidad de que la reclamación se tornara académica de no concederse el injunction prelimi-nar, y (4) analizó el posible impacto que el remedio tendría en el interés público. Así, el tribunal hizo un balance justi-ciero de los intereses de las partes y de los méritos de la reclamación de la Asociación de Vecinos.
En primer lugar, luego de evaluar la prueba antes deta-llada, el Tribunal de Primera Instancia determinó que existía probabilidad de que la Asociación de Vecinos preva-leciera en los méritos, puesto que la magnitud de la obra indica que la propiedad construida podría ser urna estruc-tura de más de una vivienda y que incluso podría ser una estructura con fines institucionales. En segundo lugar, luego de sopesar los intereses en controversia, el tribunal de instancia determinó que el daño que la Asociación de Vecinos sufriría ante una violación a las servidumbres en equidad de la Urbanización Villa Caparra Sur justificaba otorgar la orden de injunction preliminar.(16)
Al tomar estas determinaciones, el tribunal tomó en cuenta nuestro pronunciamiento en Asoc. V. Villa Caparra v. Iglesia Católica, supra, caso en el que sostuvimos la va-lidez de las servidumbres en equidad que gravan la Urba-nización Villa Caparra Sur. Así, el tribunal hizo un balance entre los daños que ambas partes estaban expuestas a su-frir y concluyó que los daños por la alegada violación a la servidumbre justificaban paralizar como medida en asegu- *332 ramiento de sentencia. Además, luego de examinar los planteamientos de AFE sobre la defensa de incuria, el tribunal de instancia determinó que era improbable que AFE prevaleciera con dicha defensa. Sobre esto, explicó que la defensa de incuria no procede por el mero pasar del tiempo, sino que requiere examinar la justificación de la dilación, el perjuicio sobre las partes y la naturaleza de los intereses involucrados. Véanse: Rivera v. Depto. de Servicios Sociales, 132 D.P.R. 240 (1992); Hernández Agosto v. Romero Barceló, 112 D.P.R. 407 (1982); Pueblo v. Tribl. Superior, 81 D.P.R. 904 (1960).
En tercer lugar, el tribunal de instancia concluyó que existe riesgo de que el reclamo de la Asociación de Vecinos advenga académico de no concederse el remedio y que la Asociación de Vecinos logró establecer la presencia de un impacto adverso sobre el interés público de no paralizarse la obra.
A los únicos efectos de una orden de injunction prelimi-nar bajo la Regla 56 de Procedimiento Civil, resolvemos que el Tribunal de Primera Instancia no abusó de su dis-creción al resolver que la Asociación tenía una reclamación meritoria que justificaba conceder un remedio provisional en aseguramiento de sentencia y al determinar que los da-ños sufridos por la Asociación de Vecinos justificaban dicha medida a la luz de los criterios de academicidad e impacto sobre el interés público. En ausencia de abuso de discre-ción del tribunal al sopesar los intereses de las partes, este Tribunal no debe intervenir con dicha determinación.
VII
En virtud de lo anterior, reconsideramos nuestro anterior dictamen en el caso de epígrafe. Procede revocar la sen-tencia del Tribunal de Apelaciones y reinstalar la orden de injunction preliminar dictada por el Tribunal de Primera Instancia al amparo de la Regla 56 de Procedimiento Civil.
*333 Antes de finalizar, debemos puntualizar que procede conceder el remedio provisional solicitado sin la previa prestación de fianza. Como adelantamos, la Regla 56.3, supra, permite conceder dicho remedio sin exigir la presta-ción de fianza cuando obren en autos documentos públicos que acrediten la existencia de una obligación legalmente exigible. En el presente caso, la escritura pública que evi-dencia la existencia de la servidumbre en equidad y las certificaciones regístrales del predio en controversia, son documentos públicos firmados ante una persona autori-zada para administrar juramento. Estas acreditan la exis-tencia de una obligación legalmente exigible, la cual ade-más es oponible a la Asociación de Fomento Educativo. Adviértase, además, que en Asoc. V. Villa Caparra v. Iglesia Católica, supra, validamos la vigencia de la. servidum-bre en equidad aquí en controversia.
En fin, ante la existencia de prueba fehaciente y autén-tica sobre la existencia de una obligación legal oponible a la Asociación de Fomento Educativo, procede conceder el remedio provisional de injunction sin exigir la prestación de fianza.
Sobre la concesión de un remedio de injunction prelimi-nar y el requisito de prestación de fianza, la opinión disi-dente invoca a Rivera Rodríguez & Co. v. Lee Stowell, etc., supra, para concluir que en toda solicitud de remedio provisional que se presente en un pleito cuyo fin sea la conce-sión de un injunction permanente, el debido proceso de ley exige el pago de una fianza. Como secuela de ello, se ar-guye que estas solicitudes se deben tramitar al amparo de la Regla 57 de Procedimiento Civil y no bajo las disposcio-nes de la Regla 56 que eximen al peticionario del pago de fianza en ciertas circunstancias excepcionales.
El razonamiento de la opinión disidente ignora que en Rivera Rodríguez & Co. v. Lee Stowell, etc., supra, declara-mos inconstitucional la Regla 56.4, en la medida en que permitía que un tribunal expidiera una orden de embargo sin celebrar una vista previa. Sobre la prestación de fianza, *334 indicamos que sin duda ello “reduce los efectos o conse-cuencias de una decisión errónea”. Id., pág. 899. Sin embargo, no indicamos que el debido proceso de ley exige la prestación de fianza como condición a la expedición de una orden provisional.
Es incuestionable que la Regla 57 exige la prestación de fianza antes de emitir un injunction preliminar. Sin embargo, ello no justifica sugerir que el emitir un injunction preliminar al amparo de la Regla 56 de Procedimiento Civil, sin la previa prestación de fianza, implica una priva-ción de la propiedad sin el debido proceso de ley.(17)
En primer lugar, no podemos olvidar que la esencia de protección del debido proceso de ley es que el procedi-miento seguido sea justo y equitativo. Rivera Rodríguez & Co. v. Lee Stowell, etc., supra, pág. 888. Sin embargo, ello se determina a partir de las circunstancias de cada caso. Por lo tanto, antes de determinar que una solicitud de injunction preliminar exige por imperativo del debido pro-ceso de ley que se preste fianza, se debe examinar el tipo de reclamo del que se trata y las garantías procesales provis-tas en cada caso.
Un examen de las disposciones de la Regla 56.3 demues-tra que dicha regla exime al promovente de prestar fianza en ciertas instancias limitadas y excepcionales. En lo que nos concierne en el presente caso, dicha regla releva al promovente de prestar fianza cuando surja de un docu-mento público o privado que la obligación es legalmente exigible. Es decir, requiere que el promovente acredite de- *335 todamente que tiene un previo interés en exigir el cumpli-miento de una obligación que surge de un documento público. Mediante este requisito entonces, se minimiza el riesgo de una determinación errónea que afecte de forma provisional los derechos de la parte que sufre la orden. Tomando en cuenta que el reclamo de la Asociación de Ve-cinos se fundamenta en el interés de hacer cumplir una servidumbre en equidad válida y debidamente inscrita, y toda vez que para otorgar el injunction preliminar en un caso como el presente se exige que se demuestre la proba-bilidad de que el promovente demuestre en los méritos la violación a dicha servidumbre, entendemos que dichas exi-gencias minimizan el daño que una determinación errónea podría tener en la parte que sufre la orden provisional.
Adviértase además, que el proceso sumario que invali-damos en Rivera Rodríguez & Co. v. Lee Stowell, etc., supra, privaba a la parte del derecho a una vista y permitía que se emitiera una orden de embargo a partir de un exa-men de las alegaciones incluidas en la demanda y en las mociones sometidas al tribunal. Contrario a ello, en el pro-cedimiento que rige la concesión de un injunction prelimi-nar bajo la Regla 56, las partes tienen el beneficio de com-parecer a una vista, y luego de ello, la regla permite que se conceda el remedio, aplicando los criterios antes expuestos.
Es indudable que los parámetros mínimos del debido proceso de ley rigen la concesión de un injunction prelimi-nar en un pleito en el que se invocan las disposiciones de una servidumbre en equidad. En estos casos, como adelan-tamos, se afecta provisionalmente el interés propietario de la parte que sufre la orden. En atención a ello, el estándar de adjudicación de la orden provisional provee salvaguar-das sustantivas dirigidas a evitar que una determinación errónea le prive de sus intereses. Así, el tribunal debe que-dar convencido de que el promovente tiene probabilidad de prevalecer en los méritos —luego de celebrar una vista a esos efectos— y que el balance de los intereses justifica la *336 concesión del remedio provisional. Además, el trámite judicial para la concesión de la orden provee a las partes una oportunidad dé presentar sus planteamientos y la evidencia quedos sustenta antes de que se conceda o deniegue el re-medio provisional.

Se dictará sentencia de conformidad con lo antes expuesto.

El Juez Presidente Señor Hernández Denton disintió con una opinión escrita, a la cual se le unió el Juez Asociado Señor Rivera Pérez.

 Dicha propiedad, a su vez, está afecta a las restricciones siguientes: “no podrá construirse nada más que una casa destinada a residencia para una sola familia y cuya edificación deberá construirse de concreto y a un costo mínimo de [c]inco [m]il [dlólares, y dicha casa deberá ser construida a una distancia no menor de quince pies de la calle que dé a su frente.” Véase Escritura Núm. 47, otorgada el 16 de diciembre de 1950, Apéndice, Primera Pieza, pág. 238.

 Entre los testigos disponibles mencionaron al Ing. Camilo Almeyda y al Sr. Juan Riestra.

 Además, el tribunal de instancia pautó una vista evidenciaría para el 2 de noviembre de 2006 en la que dilucidaría si las servidumbres en equidad de la urba-nización en controversia se han extinguido.

 Asoc. V. Villa Caparra v. Iglesia Católica, 117 D.P.R. 346 (1986).

 Debido a la similitud de propósitos entre la orden de hacer o desistir de hacer de la Regla 56 de Procedimiento Civil y el injunction preliminar que se rige por la Regla 57 de dicho cuerpo normativo, en nuestra discusión denominaremos la orden de hacer o desistir de hacer como “injunction preliminar”.

 Ello requiere, además, que a juicio del tribunal la demanda adujese hechos suficientes para establecer una causa de acción cuya probabilidad de triunfo fuera evidente o pudiera demostrarse, y hubiese motivos fundados para temer, previa vista al efecto, que de no obtenerse inmediatamente dicho remedio provisional, la senten-cia que pudiera obtenerse resultaría académica porque no habría bienes sobre los cuales ejecutarla. 32 L.P.R.A. Ap. Ill, R. 56.3.

 Para el texto completo de la ley, véase Código de Enjuiciamiento Civil de Puerto Rico de 1933, págs. 96-102. La Regla 72 de Procedimiento Civil de 1972 derogó expresamente la Ley de Aseguramiento de Sentencias de 1902. 32 L.P.R.A. Ap. Ill, R. 72.

 Las disposiciones de la Ley de 1902 guardaban semejanza con el Art. 1.428 del Código de Enjuiciamiento Civil español de 1881. El referido Art. 1.428 de la ley española disponía, en la parte pertinente:
“Cuando se presente enjuicio algún documento ... en donde aparezca con clari-dad una obligación de hacer, o de no hacer, o la de entregar cosas específicas, el juez podrá adoptar, a instancia del demandante y bajo la responsabilidad de éste, las medidas que, según las circunstancias, fueren necesarias para asegurar en todo caso la efectividad de la sentencia que en el juicio recayere.” J.M. Manresa y Navarro, Comentarios a la ley de enjuiciamiento civil reformada, Madrid, Instituto Editorial Reus, 1957, T. VI, pág. 331.

 Para un comentario sobre la historia del derecho común y la equidad, véase T.O. Main, Traditional Equity and Contemporary Procedure, 78 (Núm. 2) Wash. L. Rev. 429 (mayo 2003).

 Sin embargo, tras analizar las circunstancias particulares de ese caso, op-tamos por flexibilizar la aplicación del requisito de ausencia de un remedio adecuado en- ley y concedimos un injunction aun cuando existía un remedio en ley que el peticionario podía invocar. En Cruz v. Ortiz, 74 D.P.R. 321 (1953), el demandante solicitó un injunction para compeler a su vecino a cerrar unos huecos existentes en una pared colindante.- Al determinar que procedía emitir un injunction indicamos que el recurso de una acción confesoria de servidumbre de luces y vistas no excluía la eficacia del injunction porque el menoscabo continuo de los derechos del demandante podría conllevar una multiplicidad de litigios.

 Es menester señalar que el requisito de daño irreparable no es un elemento independiente de una acción de injunction permanente. En dicho tipo de acción, el daño irreparable sirve de medio para establecer la ausencia de un remedio adecuado en ley. Véase 11A Wright, Miller and Kane, Federal Practice and Procedure: Civil 2d Sec. 2944, págs. 93-94 (1995).

 De igual modo, la solicitud de injunction preliminar presentada por la Aso-ciación de Vecinos es cónsona con las disposiciones de la Regla 56, pues en dicha petición la Asociación de Vecinos argumentó que era innecesario probar la presencia de daños irreparables. Véase Apéndice, Primera Pieza, págs. 263-280. Ello demues-tra que es incorrecta la aseveración de la opinión disidente a los efectos de que la Asociación de Vecinos solicitó el remedio al amparo de la Regla 57 porque aludió a los requisitos del injunction preliminar que hemos adoptado en el contexto de la Regla 57. No podemos olvidar que es norma reiterada por este Tribunal que, “independien-temente de lo solicitado por las partes, el tribunal concederá el remedio que en derecho proceda”. Náter v. Ramos, 162 D.P.R. 616, 636 (2004); Soto López v. Colón, 143 D.P.R. 282, 291 (1997). Por tanto, no erró el tribunal de instancia al emitir el injunction preliminar al amparo de la Regla 56 de Procedimiento Civil, puesto que a la luz de la petición de la Asociación de Vecinos, ése es el remedio que procedía en derecho.

 Al respecto, la opinión disidente insiste en que el tribunal de instancia otorgó el injunction preliminar al amparo de la Regla 57 de Procedimiento Civil y que simplemente se equivocó al aplicar las disposiciones de la Regla 56 en cuanto a la fianza. No podemos estar de acuerdo con este razonamiento que ignora las expre-siones que hizo el juez del tribunal de primera instancia al emitir el injunction preliminar y al dictar la correspondiente resolución y orden. Primero, debemos rei-terar que en la vista, el juez indicó que estaba considerando un remedio provisional al amparo de la Regla 56 de Procedimiento Civil. Véase Trascripción de la vista, Apéndice, Segunda Pieza, pág. 711. En segundo lugar, el tribunal empleó un análisis detallado de las disposiciones de la Regla 56.3, el cual no se hizo meramente por error. Sobre este asunto, el juez indicó que “[r]especto a la solicitud de paralización solicitada por la AWCS, resolvemos que, a la luz del derecho vigente ésta no viene obligada a prestar fianza para la concesión del remedio provisional solicitado”. Apén-dice, Primera Pieza, pág. 36. Acto seguido, justificó su determinación en las dispos-ciones de la Regla 56.3. Por tanto, es improcedente aseverar y concluir que el juez del Tribunal de Primera Instancia simplemente se equivocó al eximir a la Asociación de Vecinos de prestar fianza en este caso.

 En dicha moción AFE argüyó que un grupo de entre 6 y 8 mujeres ha residido en la propiedad J-42 desde 1987 y que, entre el período de tiempo compren-dido entre 1987 y 2005, la Asociación de Vecinos no cuestionó el uso de la vivienda por dicho grupo de mujeres. Véanse los autos originales del tribunal de primera instancia, Tomo Núm. 3.

 En su declaración, la Sra. Socorro Garay indicó que vivió en la residencia J-42 desde 1987 hasta el 2005. Por su parte, la señora Camacho González indicó que comenzó a vivir en dicha propiedád en 1988. Véanse autos originales del tribunal de primera instancia, Tomo Núm. 2. También obran en el expediente del tribunal de primera instancia declaraciones juradas de las Sras. Margarita Ivette Matos Gonzá-lez, Ana María Riestra Carrión, María S. Carreras Miranda y Hannia Rivera Aré-valo, damas que han vivido en la residencia J-42. íd.

 Es menester resaltar que el tribunal de instancia aclaró que era innecesario probar la existencia de daños irreparables, puesto que bastaba probar una violación a la servidumbre. Apéndice, Primera Pieza, págs. 27-29. A pesar de ello, el tribunal luego concluyó que los daños que la Asociación de Vecinos sufriría serían irreparables. Aun cuando no es necesario en esta causa de acción probar la existencia de daños irreparables, dicha expresión no constituye un error que amerite revocar la determinación del foro primario. Tampoco implica, como aduce AFE, que el tribunal emitió el injunction bajo la Regla 57 de Procedimiento Civil. Como expresamos, el tribunal reconoció que era innecesario probar la existencia de daño irreparable. En-tendemos que su expresión en torno a que los daños eran irreparables, simplemente es un reflejo de la primacía que dicho foro le confirió a los daños que la Asociación está expuesta a sufrir en este caso.

 La consecuencia lógica de la posición disidente sería declarar inconstitucio-nal las disposiciones de la Regla 56.3, que eximen al promovente de un remedio provisional del pago de fianza en circunstancias excepcionales. Más aún, ¿cuál es la justificación para concluir, como hace la opinión disidente, que cuando se solicita una orden de hacer o desistir de hacer en un pleito cuyo objeto es obtener un injunction permanente, el debido proceso de ley exige que la solicitud se tramite al amparo de la Regla 57 con la exigencia de la fianza, mientras que cuando se solicite dicho remedio en un pleito cuyo objeto principal no sea obtener un injunction, se puede recurrir a la Regla 56 con sus excepciones en cuanto a la fianza? La ausencia de una justificación para este tratamiento dispar denota, a nuestro juicio, su improcedencia.